174 So.2d 521

Succession of Mrs. Deneza Clement HOUSSIERE.

No. 47454.

March 29, 1965.

Rehearing Denied May 3, 1965.

George H. Van Geffen, Carroll D. Van Geffen, New Orleans, for appellant.

Bean & Rush, Lafayette, Knight & Knight, Herschel N. Knight, Jennings, for plaintiffs in rule and respondents.

McCALEB, Justice.

This proceeding was instituted by six (a son, four daughters and a grand-daughter, issue of a predeceased son) of the eight forced heirs of Mrs. Deneza Clement Houssiere, who died intestate at her domicile in Jefferson Davis Parish on May 26, 1962, to remove the administratrix of the succession, Mrs. Marie Houssiere Van Geffen, another daughter of the decedent, on the

ground that she has mismanaged the succession in that:

(1) She intended to recommend payment of an allegedly excessive fee ($25,000.00) to the attorneys (her two sons) retained by her as administratrix to settle the estate; and

(2) Alternatively, in the event she had not agreed to pay such fee, she had hired these attorneys without prior investigation or agreement respecting the attorneys' fees which they would charge.

The salient facts of the case are that a few days after the death of Mrs. Houssiere, her daughter, Mrs. Van Geffen, filed a petition in the district court of Jefferson Davis Parish, conformably with law (Articles 3091 and 3092, Code of Civil Procedure) for appointment as administratrix of the succession. On June 8, 1962, the judge issued an ex parte order of appointment. On the same day the six heirs, who are now petitioning for the removal of Mrs. Van Geffen as administratrix, obtained a rule for her to show cause why the order appointing her administratrix should not be vacated and that it be decreed that there is no necessity for an administration of the estate and, alternatively, should it be held otherwise, the appointment should nevertheless be vacated and decedent's only surviving son, Eugene Paul Houssiere, be appointed administrator of the estate.

Thereafter, on June 15, 1962, Mrs. Van Geffen filed an exception of no right or cause of action to the rule which was sustained by the district judge, then temporarily sitting for the incumbent judge of the Thirty First Judicial District Court, and the proceeding was dismissed. This judgment was affirmed by the Court of Appeal, 146 So.2d 483, Third Circuit, on November 5, 1962. That court held that, since only six of the heirs had agreed to accept the succession unconditionally, and administration was proper for, under CCP Art. 3001 and Succession of Browne (La.App.) 142 So.2d 494 (affirmed by this Court, see 244 La. 36, 150 So.2d 555), an administration of an intestate succession may be dispensed with only in cases where the succession is relatively free from debt and all of the heirs are competent and accept the succession unconditionally. See Succession of Houssiere, 146 So.2d 483. Upon the finality of the Court of Appeal judgment the opponents applied here for a writ of review which was refused on January 14, 1963 with the notation "The judgment complained of is correct".

Soon after her appointment, Mrs. Van Geffen qualified as administratrix and furnished a $50,000 bond. Aside from the litigation above referred to and the present action for her removal, she defended a short unsuccessful suit instituted by an allegedly adoptive child of a predeceased son of the decedent who sought to be recognized

as a co-heir. She also caused a correct inventory to be made of all assets of the succession, which consisted of land and mineral rights situated in four parishes, Jefferson Davis, Acadia, Vermilion and Cameron, valued at $238,915.28, and personal property valued at $41,201.70, showing the total assets to be $280,116.98.

In addition, during her tenure until the filing of this proceeding, the administratrix collected $65,280.60 in income and from sale of commodities and lease bonuses and paid out $57,976.40 in obligations of the estate; she has executed leases, paid taxes, ratified the sale of an undivided 20% interest of the succession in 2157.57 barrels of rice located at two warehouses, all with the approval of the court. On May 20, 1963 she filed her annual account, which was homologated without objection from the heirs who are now opposing her, showing disbursement of $6105.98 and cash receipts of $31,478.66 which, when added to the cash on hand, showed a total balance in the Calcasieu Marine National Bank of Jennings of $50.-543.77.

Within the fifteen-month period allowable without penalty for the payment of Federal estate taxes, to wit, on August 19, 1963, the administratrix filed a petition in the district court for authority to pay the Federal Government $35,887.50 representing the estate taxes due and also for the payment of $4464.00 State inheritance taxes. In the Federal Estate Tax return, there was listed under the heading "Administration Expenses" $25,000 for attorneys' fees—"amount estimated" and on the State return the attorneys' fees were also listed at that sum.

Soon after the court's approval of the payment of these taxes this removal proceeding was brought on the ground that the administratrix did not have the interest of the estate at heart; that she was conducting an administration solely in the interest of her attorney sons and that she had mismanaged the succession by proposing to pay her sons an exorbitant fee. To these charges the administratrix filed a plea of res judicata, an exception of no cause of action and of prematurity. The pleas were overruled and, after a hearing on the merits, the district court granted judgment removing the administratrix.

In his written reasons, the trial judge expressed the view that an administration of the estate had been wholly unnecessary because there were no debts other than funeral bills and expenses incurred during the last week or two of decedent's illness. From this premise, the judge took the position that, since there was evidence that competent counsel in Jefferson Davis Parish would have handled the succession for $5,-000, there was no occasion for the administratrix to employ her two sons, who live and practice in the city of New Orleans, to handle the estate and that, having represented to the Department of Revenue that

her sons' fees would be $25,000, this constituted mismanagement of the estate and particularly so, since the administratrix testified that she believed that her sons should be entitled to $50,000 as attorneys' fees for all the trouble that the other heirs had caused.

When the case was reviewed by the Court of Appeal, that tribunal took a different view of the issue. It declared (see 166 So. 2d 98) that the issue of whether an administration was necessary or not had been foreclosed by its former opinion and that it was immaterial, for the purpose of this contest, whether the succession could have been handled less expensively without an administration. It also agreed with the argument of counsel for the administratrix that, since the administratrix has never submitted an attorney's fee for approval, the issue anent the amount of attorneys' fees was premature and that " * * * the coheirs will then have their day in court to contest the allowance * * *" if and when the attorneys' fees are submitted for court approval.

This resolution, in our view, should have ended the case. However, notwithstanding these pronouncements, the Court of Appeal proceeded to determine whether or not the administratrix should be removed for mismanagement because she had indicated that she would approve a $25,000 fee for her sons in recompense of their professional services. In reaching the conclusion that

the trial judge did not clearly abuse his discretion in removing the administratrix, the Court based its view on what it conceived to be a clash of policies—the "broad trial discretion" policy on the one hand, which it approved, and the "stability of administration" policy on the other, which it rejected on the ground that the Legislature may have indicated that it preferred the "broad trial discretion" policy since it had provided in CCP Article 2974 that there is no suspensive appeal from a judgment removing an administrator.

We do not subscribe to the view of the Court of Appeal that cases of removal for alleged mismanagement by fiduciaries should be decided on the ascertainment of legislative policy. Rather, we think the issue should be adjudged on whether the act or acts complained of constitute a mismanagement of the estate. Indeed, the pertinent provisions of CCP Art. 3182, under which these proceedings were brought, declaring that "The court may remove any succession representative who * * * has mismanaged the estate * * *", clearly indicate that the acts of mismanagement alleged must have occurred previous to the time the removal of the succession representative is sought. Also clear is the definition of the word "mismanage", which simply means to manage badly, improperly or unskillfully. See 27 Words and Phrases, Permanent Edition, p. 546, citing McKnight v. United States, C.C.A.Cal., 78 F.2d 931. It connotes

the commission of an act or the omission of a duty which redounds to the detriment of the estate; an act or omission usually amounting to misconduct or breach of trust to warrant removal. See under headings 33 C.J.S. Executors and Administrators § 90 (b) and 21 Am.Jur. Sec. 154.

When mismanagement is shown, the trial judge may or may not remove as the statute unquestionably vests in him the exercise of a sound discretion (see Comment (b) under CCP Art. 3182) but the *power* to remove only comes into esse when there is convincing evidence of an act or acts of mismanagement.

In this case, we find no evidence establishing mismanagement as a fact on the part of the administratrix. On the contrary, the entire basis for her removal consists of the fact that she has indicated her intention to recommend payment of an excessive fee ($25,000.00) to her son-attorneys for the professional services rendered by them in settling the estate. The fact that she concedes in her testimony that she will approve such a fee or even a higher one (which seems to be excessive for the work done at the time this opinion is written) does not constitute mismanagement of the estate. It merely evidences an exaggerated appraisal on the part of the administratrix as to the value of her sons' services to the estate. But, to repeat, this does not constitute an *act* of mismanagement (see Han-

sell v. Hickox, 121 La. 721, 46 So. 784); it refers solely to something that may be done in the future as to which the complaining heirs have an adequate remedy under CCP Articles 3303–3307. No attorneys' fees have been paid; none have yet been recommended for payment by the administratrix and none can be paid without court approval after notice and a contradictory hearing, if payment is opposed. And, even if it is not opposed, the judge, if he feels that the charge is exorbitant, has the power to refuse the succession representative authority to pay such charge. For CCP Art. 3301, so far as applicable here, declares: "A succession representative may pay the debts or charges of the succession only with the authorization of the court, * * *."

In our research of the authorities, we have been unable to find any case which bears resemblance to the facts of this one, because in all other instances of removal the acts involved were acts of waste, fraud or misconduct. In these circumstances, citation of authority would be superfluous.

We feel impelled to advert, however, to the theory upon which this proceeding for removal is predicated which is, in substance, that the succession representative sought the administration of the estate purely for the benefit of her attorney-sons so that they could extract an exorbitant fee. Although not alleged it is suggested, at least by innuendo in the pleadings, that there exists a conflict of interest on the part of the ad-

ministratrix which requires her removal because she is more interested in securing a large fee for her sons than in preserving and prudently administering the assets of the estate.

A review of the record has convinced us that these suggestions and arguments are without foundation in fact as we find nothing, insofar as the conduct of the administratrix is concerned, to show that she has been unfaithful to her trust or that she has committed any act of mismanagement. The mere circumstance that she employed her sons to represent the succession does not exhibit a conflict of interest. Conversely, it occurs to us that this was a natural appointment for, since the attorneys are the grandsons of the decedent, their appointment seems appropriate, even though they happen to live and practice in the city of New Orleans. And the fact that the administratrix did not arrange the amount of their fees in advance is not evidence of a desire on her part to administer the estate for her sons' benefit. Nor do we consider her statement on the witness stand that her sons may be entitled to a $50,000 fee, in view of the harassment they have encountered from the other heirs, evidences a solid basis for a conclusion that there is a conflict of interest or that her predominant intention in securing the administration of the estate has been to benefit her sons. In fine, there has been no *act* or omission on the part of the adminis-

tratrix that has redounded to the disadvantage of the estate or its heirs.

Being of the opinion that the exception of prematurity is well founded and should be sustained, the judgment of the district court, which was affirmed by the Court of Appeal, is annulled and set aside and this proceeding for the removal of the administratrix is dismissed. The petitioners in rule are to pay all costs.

HAWTHORNE and HAMLIN, JJ., dissent with written reasons.

SUMMERS, J., dissents for the reasons assigned by HAWTHORNE, J.

HAWTHORNE, Justice (dissenting).

In my opinion the judgment of this court reversing the decision of the district court and the Court of Appeal to remove the administratrix of this succession, Mrs. Marie Houssiere Van Geffen, for mismanagement works a grave injustice against those heirs seeking her removal in view of the serious matter that the record in this case discloses.

The first question presented to this court is whether under the facts and circumstances of this case the administratrix has mismanaged this succession. If the answer to this question is in the affirmative, there remains for consideration whether the trial judge abused his discretion in ordering her removal. Article 3182 of the Code of Civil

Procedure gives to the court discretionary power to remove the succession representative for the causes specified, one of these being mismanagement.

Mrs. Van Geffen provoked the administration of this succession solely for the purpose of imposing her will on six of the heirs in the matter of employing her sons to do the legal work necessary for the estate. The trial judge in his reasons for judgment observed: "If there is any possibility of there being an estate of this size which could be handled with a simple acceptance, rather than by an administration, this is the case." The decedent's estate was appraised at more than $250,000.00, which included over $60,000.00 in cash. She also left properties from which there is being received a monthly income of approximately $2000.-00. There were no debts other than funeral expenses and expenses incurred during the final week or two of her last illness. This was a simple succession which presented no problems of administration. It could have been handled without administration. The heirs had agreed that no administration would be necessary.

The evidence adduced in the lower court discloses that during the last illness of the deceased the heirs discussed among themselves whether an administration of the estate would be necessary, and concluded that no administration would be needed. One of the heirs testified that Mrs. Van Geffen herself stated that there was no necessity for the appointment of an administrator. The heirs, however, could not agree among themselves as to whom they would employ to do the legal work necessary. Mrs. Van Geffen wanted to employ her two sons, who practiced law in New Orleans. The others objected, desiring to employ local counsel, but Mrs. Van Geffen would not agree to this. A feeling of bitterness and hostility resulted. In order to prevent the employment of another attorney and to secure the succession fees for her sons she hurriedly obtained, without the knowledge and consent of the other heirs, the ex parte order now permitted in our procedure appointing her administratrix of the succession. Immediately after her appointment she employed her two sons as attorneys for the administratrix, without any agreement as to the amount of the fees they would charge for their services. She stated frankly that in the past she had helped and patronized the other heirs, and she thought it was her turn to be patronized.

It is Mrs. Van Geffen's own testimony which proves that her interest was not to secure for the heirs their shares of the estate with the least expense possible, but was to assure that her sons would be employed to do the legal work necessary for the estate. She readily testified that she provoked this administration for the sole purpose of obtaining legal fees for her sons. Their interest was her interest. This

interest clashes with her interest as an administratrix. Article 3191 of the Code of Civil Procedure provides: "A succession representative is a fiduciary with respect to the succession * * *. He shall act at all times as a prudent administrator." When she appointed her sons she created a conflict of interest in my opinion, and made possible a situation where she would have the opportunity to promote their interest to the detriment of the succession.

It is not wise for an administrator to place himself in the equivocal position where his personal interest conflicts with his fiduciary duty. This situation is considered so serious as not to be tolerated in some jurisdictions. As stated in the case of In re Parker, 200 Cal. 132, 251 P. 907, 49 A.L.R. 1025, "The law, for wise reasons, forbids a person occupying a fiduciary relation to assume a position which might possibly be adverse to his duties. It is against public policy to permit such a person to be placed where he might be tempted to betray his trust * * *. 'When one undertakes to deal with himself in different capacities—individual and represen-

tative—there is a manifest hostility in the position he occupies.' "

I recognize that the existence of a conflict of interest is not one of the causes for removal of a succession representative under our Article 3182, but where a conflict does exist, any act of the succession representative in the course of the administration showing that he is favoring the conflicting interest over the succession interest is mismanagement in my opinion, and ground for removal.[1]

In my opinion, when Mrs. Van Geffen created a conflict of interest by appointing her sons, at the very least she thereby increased her duty to make sure that these sons' interests would not be favored over the interest of the succession in the matter of setting their fees. Instead of fulfilling this greater duty, the facts show that she has clearly abdicated her duty as a fiduciary in order to favor her sons over the succession she represents by approving for them highly excessive fees. When she sought an order to pay state inheritance taxes and federal estate taxes, she committed her first act in administration show-

1. The majority opinion considers that no conflict of interest was created by the appointment of the sons of the administratrix because it was the *natural* appointment to make. It is obvious that all conflicts of interest represent a *natural* state of things from the point of view of the succession representative. Under this reasoning all conflicts of interest would disappear. What is more natural than for one to promote one's own interest? It is entirely *natural* for a succession representative to employ himself as counsel when he is also an attorney, but that practice has been thoroughly condemned in the strongest language by this court as a conflict of interest to the extent of allowing him no remuneration for such services. See Baldwin's Executor v. Carleton, 15 La. 394; Succession of Key, 5 La.Ann. 567.

ing that she was managing the estate so as to favor her sons over the succession, and this was an act of mismanagement. In the forms used for computing these taxes she declared that the fee she proposed to pay her attorneys was $25,000.00—a fee manifestly excessive. The fee in the federal form was estimated only, but the administratrix under penalty of perjury declared that the tax return was true and correct, a complete return made in good faith. Mrs. Van Geffen testified under oath that she did not think the fee of $25,000.00 was reasonable, that she had told her sons to charge $50,000.00, and that as administratrix she would approve this latter sum for payment.

At the trial of this case the attorneys for the administratrix had every opportunity to deny that they would actually charge these highly excessive fees, but instead their questioning of witnesses showed that they were trying to uphold these charges as proper.

Here we are not dealing with mismanagement resulting from technical errors or honest errors of judgment; what the administratrix has done in this case is of a much more serious nature—it strikes at the foundation of her role as a fiduciary. The heirs were fully justified in complaining at her *first act* showing that she was favoring her sons' interest over the succession, and their complaint here is not premature. In my opinion they ought not to be compelled to have the succession continue under an administratrix who revealed so clearly on the trial of this case that she was mismanaging the estate so as to assure her sons large fees rather than managing it with the least possible expense to the heirs.

Inasmuch as the opposing heirs did successfully show her mismanagement of the succession, the district judge then had discretion under Article 3182 of the Code of Civil Procedure to remove her, or not to remove her if he considered the stability of administration required her to remain notwithstandng her mismanagement. Clearly, in this case the only persons benefitting by this administration are the administratrix and her attorneys, and the stability of this administration did not require her continuance. The district judge did not abuse his discretion by removing her, therefore, and the Court of Appeal judgment should have been affirmed.

HAMLIN, Justice (dissenting).

After a full consideration of the issues in this case, and without any intention to reflect upon the integrity or sincerity of anyone, it is my view that there is an impasse in this case incapable of being solved unless the Gordian knot occasioned thereby is cut.

Just as the law abhors a multiplicity of suits, so does the law abhor legal bickering

with its resultant inconvenience, expense and delays, particularly in probate matters.

Over one hundred years ago, Charles Dickens eloquently crusaded against legal delays. Foremost among his many literary accomplishments was "Bleak House", (1853), wherein he painted a word picture depicting the misery, unhappiness, expense and chaos resulting from protracted litigation.

William Shakespeare (1564–1616) also crusaded against the law's delay.

I have always been of the opinion, during a general practice of twenty-nine years and ten years as a district judge, that courts should see that a succession matter is completed speedily, efficiently, and with as little expense and inconvenience as possible—all in the best interest of the creditors and all heirs of the decedent, even though some heirs may be disappointed as to how the matter should be handled. Reason dictates and justice demands that this should be so.

The people of Louisiana voted favorably for an amendment to our Constitution, effective July 1, 1960, designed to eliminate delays in Appellate Courts, and as a result thereof our judicial system is functioning smoothly and expeditiously.

Being of the view that the result reached by the Court of Appeal is correct, I respectfully dissent.