752 So.2d 237 (1999)
SUCCESSION OF Pearl Agnes LaFLEUR.
No. 99-1100.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
Rehearing Denied January 13, 2000.
Writ Denied March 31, 2000.
Allan Leland Durand, Lafayette, Louisiana, for Arlen LaFleur & Sucession of Pearl LaFleur.
Reginald J. Ringuet, Lafayette, Louisiana, for Anne L. Padgett, et al.
William Joseph Billeaud, East Alton, Illinois, for Marie Louise Landreneau Billeaud.
John Haas Weinstein, Opelousas, Louisiana, for Sucession of Pearl LaFleur and Arlen LaFleur.
Mark G. Artall, Lafayette, Louisiana, James Paul Doherty, Jr., Opelousas, Louisiana, for Ricky LaFleur.
Before DOUCET, Chief Judge, AMY, and GREMILLION, Judges.
GREMILLION Judge.
In this case, the trial court removed Arlen LaFleur as executor of the Estate of Pearl Agnes LaFleur because of mismanagement of the estate. Arlen appeals that decision. For the following reasons, we affirm.

FACTS
Pearl Agnes LaFleur died childless on July 11, 1995, leaving all of her property to her twenty nieces and nephews and naming her nephew Arlen LaFleur the executor of her estate in the event an administration became necessary. Most of her property at the time she confected her will consisted of two tracts of land in St. Landry Parish, one known as the "Grand Prairie" property consisting of 145 acres on which was located her home and the other was 25.46 acres on a separate section within the same parish. Before her death, Pearl transferred the 25.46 acre tract and a 1/12th undivided interest in the 145 acres to Arlen, therefore, that portion of the property is not part of her estate. Also bequeathed to Arlen was a six-month option to purchase the estate's 11/12th undivided interest in the 145 acre tract. In the event Arlen exercised the option, the will provided that the sum paid for the property be determined by "no less than two competent appraisers." If he did not exercise the option, the property would go to *238 the legatees in the proportions set forth in the will.
On July 9, 1996, almost a year to the day after Pearl's death, Arlen was confirmed as the executor of her estate. He never exercised his option and testified he never intended to do so. On August 6, 1996, a contract[1] was executed in which Dr. Pat Gillespie agreed to pay $135,000 for the 11/12th interest in the 145 acres owned by the estate, Arlen's undivided 1/12th interest, and all of the contents of Pearl's home. Also as part of the agreement, Dr. Gillespie would acquire 8.32 acres owned by L.L. & F. Inc., a family-owned corporation of which Arlen is listed as the president and the registered agent for service of process. However, Dr. Gillespie testified that he was prepared, willing, and able to buy the property as per the terms of the contract, but the sale never took place because Arlen never sought court approval for the transaction.
On December 2, 1996, Arlen filed a Detailed Descriptive List of the Succession Property and a Petition for Authority to Sell Immovable Succession Property seeking court approval to sell the estate's undivided 11/12th interest in the property to L.L. & F. The descriptive list stated the value of the estate's 11/12th undivided interest in the 145 acres as $87,083.33. After receiving court approval for this sale, Arlen sold the estate's interest in the property to L.L. & F. for $87,083.33. On that same day, before the same notary public, L.L. & F. and Alien sold by cash deed 137 of the 145 acres to John Allen LaFleur. Arlen and L.L. & F. retained the ownership of eight acres fronting the parish road and highway. The cash sale deed also provided that Arlen and L.L. & F. received the hunting and one-half of the mineral rights for the property as well as the right of first refusal to repurchase the property. From that sale, Arlen and L.L. & F. received a total of $120,000; $87,000 in cash and a $33,000 promissory note. Although Arlen claims he notified the coheirs of the sale to L.L. & F., he did not disclose that a large portion of the property would be transferred to a third party for considerably more money. The heirs[2] filed suit to have Arlen removed as the succession representative for mismanagement. Ultimately, the trial court found that Arlen mismanaged the estate in violation of La.Code Civ.P. art. 3182 and replaced him with Ricky LaFleur.

DISCUSSION
Arlen now appeals, asserting, first, that the trial court erred in determining that the estate's interest in the property in question was worth more than the price paid by L.L. & F., and second, in light of his offer to cancel the sale and transfer the property back to the estate, his actions did not rise to the level of mismanagement necessary to remove a succession executor. Since the assignments of error involve the same issue of mismanagement, we shall address them together.
The determination of whether to remove or replace a succession representative is committed to the discretion of the trial court and should not be reversed by the appellate court in the absence of an abuse of that discretion. Succession of Songne, Sr., 94-1198 (La.App. 3 Cir. 11/2/95); 664 So.2d 556. A court may remove any succession representative who is or has mismanaged an estate or failed to perform any duty imposed by law or by order of the court. La.Code Civ.P. art 3182.
La.Code Civ.P. art. 3191 states that:

*239 A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.
As discussed in State v. Hagerty, 251 La. 477, 492-493, 205 So.2d 369, 374-75 (1968), cert denied, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 855 (1968); (citations omitted) (emphasis added).
"The word `fiduciary,' as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by this undertaking to act primarily for another's benefit in matters connected with such undertaking. Also more specifically, in a statute, a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person, trust, or estate" 36A C.J.S. Fiduciary, p. 381, Breaux v. Daigle 571 So.2d 231 (La.App. 3 Cir.1990).
One is said to act in a `fiduciary capacity' or to receive money or contract a debt in a `fiduciary capacity,' when the business which he transacts, or the money or property which he handles is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part. The term is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer. Black's Law Dictionary Fourth Edition 1951, Fiduciary Capacity.
While valuation of the property is pertinent to the issue of mismanagement, it is not solely dispositive of this issue. The issue of importance in this case is whether Arlen managed the succession in good faith and in the best interests of the legatees. "Fiduciaries may not place their own interest before the succession interest." Succession of Mangle, 452 So.2d 197, 200 (La.App. 3 Cir.1984); Succession of Demarest, 418 So.2d 1368 (La.App. 4 Cir.1982), writ denied, 422 So.2d 158 (La. 1982). "While a mere conflict of interest in itself does not warrant removal, when this conflict becomes such that it is actively tainting the administration of the succession, removal of the executor becomes necessary." Succession of Mangle, 452 So.2d at 200. Further, the supreme court has held that "[w]e do not subscribe to the view .... that cases of removal for alleged mismanagement by fiduciaries should be decided on the ascertainment of legislative policy. Rather, we think the issue should be adjudged on whether the act or acts complained of constitute a mismanagement of the estate." Succession of Houssiere, 247 La. 764, 772, 174 So.2d 521, 524 (1965). The supreme court further defined mismanagement as the commission of an act or the omission of a duty which is detrimental to the estate, such as an act or omission usually amounting to misconduct or breach of trust sufficient to warrant removal, and that mismanage means to manage badly, improperly or unskillfully. Id.
In its decision in the case at hand, the trial court stated:
The Court's impression is that Mr. La-Fleur mismanaged the Estate in violation of La.Code Civ.P. art. 3182. The reality is that L.L. & F., Inc. is the family owned corporation of Arlen La-Fleur; however, Arlen LaFleur failed to reveal his association with this corporation when he petitioned this Court to sell the property. The Court notes that there was a conflict of interest when *240 Arlen LaFleur sold the estate property to his family-owned corporation....
The trial court also found that under the terms of the cash sale deed to John Allen LaFleur, the estate's 11/12th undivided interest in the property was worth approximately $87,000, while Arlen's 1/12th was worth approximately $33,000. Although the trial court found that the 11/12th undivided interest, because it is an undivided interest, may be worth less than full ownership of the property, it reasoned that it should be worth more than 72.5% of the actual sale price (particularly if in the cash sale deed Arlen's 1/12th undivided interest is worth 27.5% of the sale price.) Accordingly, as part of its determination to remove Arlen, the trial court noted that it "is not deciding whether Arlen LaFleur's mismanagement of the Succession is actionable. Nevertheless, the evidence received would indicate that the possibility of such litigation exists." The trial court noted that it would not expect Arlen as the executor to sue himself personally for mismanagement, and as such, felt compelled to remove Arlen due to this conflict.
Mismanagement, and in this case, the breach of fiduciary duty encompassed by such action, is an issue broader in scope than the mere determination that an administrator or executor was inept at his duties; it goes to a breach of confidence with which the executor was entrusted. We agree with the trial court's determination that Arlen mismanaged Pearl's estate. Arlen testified that he had no intention of exercising his option and that his motive for not distributing the property as instructed by the will was to protect and manage his 1/12th undivided interest. Further evidence of Arlen's mismanagement can be seen in the proposed transactions with Dr. Gillespie and the transaction with L.L. & F. and John Allen LaFleur. Both transactions inured to the benefit of Arlen and L.L. & F. and to the determent of the estate.
We further find no merit in Arlen's assertion that his actions do not rise to the level of mismanagement in light of his offer to cancel the sale to John Allen La-Fleur and transfer the property back to the estate.
When mismanagement is shown, the trial judge may or may not remove as the statute unquestionably vests in him the exercise of a sound discretion (see Comment (b) under Art. 3182) but the power to remove only comes into esse when there is convincing evidence of an act or acts of mismanagement.
Succession of Houssiere, 247 La. at 773, 174 So.2d at 525.
As noted above, we agree with the trial court's conclusion that Arlen breached his fiduciary duty to the estate by mismanaging the the estate's assets, and that he should be removed a the succession representative. We further find that under the sound discretion vested in the trial court under Article 3182, and because of the convincing evidence of Arlen's acts of mismanagement, the trial court did not commit error in removing Arlen as the succession representative notwithstanding his promise to restore the property to the succession. For the reasons set forth above, we find no merit in these assignments or error.

CONCLUSION
The judgment of the trial court is affirmed. All costs of these proceedings are assessed against the defendant-appellant, Arlen LaFleur.
AFFIRMED.
NOTES
[1] Of the $135,000 Dr. Gillespie would have paid, $87,000 would have been paid to the Estate giving a price of $654 per acre. After adjustment for the value of the furnishings there would have been remaining $43,900 paid to L.L. & F. and Arlen, or $2,150 per acre.
[2] The heirs bringing suit are: Ricky LaFleur, Anne L. Padgett, Carrie LaFleur Soileau, Marjorie L. Fontenot, Susan L. Roberie, Melanie L. Jobert, Stephanie L. Quebedeaux, Gretchen M. LaFleur and Michael W. Lassere, M.D.