975 So.2d 53 (2007)
SUCCESSION OF Richard J. BRAZAN, Sr.
No. 07-CA-566.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
*54 Louis R. Koerner, Jr., Koerner Law Firm, Houma, LA, for Plaintiff/Appellant.
Daniel A. Cavell, Annette M. Fontana, Morvant & Cavell, APLC, Thibodaux, LA, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
The appellant, Paul Brazan, has appealed two district court judgments denying his motion to remove the executrix of this succession, setting the executrix's fee and attorney's fees for the succession, and denying his motion to have his attorney's fees paid from the succession. For the reasons that follow, we affirm.
FACTS:
Richard Brazan, Sr. died testate on July 19, 2002. A Petition to Appoint an Executor and Institute a Search for a Will was filed on October 1, 2002. A Will dated February 23, 1999 was produced. The probate of this Will was contested and on January 27, 2003, the Will was declared to *55 be invalid. Thereafter, the Will of November 26, 1990 was probated. The 1990 Will appointed Donna Marie Brazan Gauthreaux (hereinafter referred to as Donna) as executrix of the estate. Following the dismissal of the opposition to probate the 1990 Will, Donna was appointed executrix on August 14, 2003. Donna filed a Detailed Descriptive List of the decedent's property. The property consisted of miscellaneous furniture, fixtures and appliances, cash, and a note from a corporation; said property totaled $93,162.15. On October 3, 2003, appellant, Paul Brazan (hereinafter Paul), filed a Motion to Disqualify Donna and appoint himself or another sibling, Richard Brazan, Jr. (hereinafter (Richard, Jr.)) as executor. Although the designated appellate record does not contain a ruling on this motion, the minute entry of August 16, 2005 appears to indicate that appellant withdrew this motion.
While the succession was pending, another suit was being processed in district court. This suit, entitled Brazan v. Brazan, bearing District Court No. 28,451, involved among other issues, the sale of stock owned by the decedent, Richard Brazan, Sr., prior to his death. The decedent owned 20% of the stock in a corporation known as Vacherie Maintenance and Management, Inc. (hereinafter, VMM). Six of decedent's seven children owned 1/6 of the remaining 80% of the stock, including Donna, who had been appointed as the decedent's curator. Paul did not own any stock in VMM. The trial court granted Donna's petition to sell decedent's 20% of stock to VMM for $100,000.00. Richard, Jr. and Paul filed suit against their five siblings claiming this sale of stock was null and void. Richard, Jr. later withdrew his objection to the sale. Paul alleged that the sale should be declared void because the curator benefited from this sale in that her holding in VMM stock increased from the sale. Paul further alleged that the sale was not in the decedent's best interest because the stock was worth significantly more than $100,000.00. The trial court denied Paul's Motion for Partial Summary Judgment on this issue. Paul's writ to this Court was granted and this Court found that because both the curator and the interdict owned an interest in VMM, the sale could be authorized under C.C.P. art. 4566 B as long as all requirements of the article were met. On October 12, 2004, finding the petition to sell the stock did not specify that the stock would be sold to a corporation in which the curator held an interest and there was no independent appraisal of the stock and no showing of good cause why an appraisal was not necessary, this Court voided the sale and remanded this matter to the trial court.
An appraisal of the stock was carried out and on July 25, 2006, Donna filed a Supplemental and Amending Descriptive List. This list included the decedent's interest in the VMM stock valued at $316,400.00 and cash of $100,241.89. On that same date, Donna also filed a Tableau of Distribution listing attorney's fees of $14,435.00 and a succession representative's fee of $10,416.05.
On August 15, 2006, Paul filed an Opposition to the Tableau of Distribution, a Motion to Compel Discovery, and a claim for attorney's fees. In this motion, Paul argued that a substantial portion of the attorney's fees listed in the tableau were incurred during the time Attorney Cavell represented the five heirs who were in favor of the stock sale. Paul further argued that he was entitled to attorney's fees for successfully declaring the sale of the stock a nullity.
In response to this motion, Donna and Cavell submitted detailed billing records from Cavell listing the date, work performed, i.e. call from client, attended hearing, *56 dictating letter, etc., and amount of time spent on the work. Donna stated that the court had witnessed the actions of Cavell throughout the proceedings and numerous court appearances, which would indicate the fees charged were reasonable for the work performed. Donna argued that the succession representative's fee of $10,416.05 was due under C.C.P. art. 3351. With regard to Paul's claim for attorney's fees, Donna contends Paul has requested attorney fees in the action to annul the sale of stock and his request for fees is not properly made in this suit.
On October 12, 2006, Paul filed a motion requesting that Donna be removed as executrix and Cavell be disqualified as attorney for the succession. In this motion, Paul argues that Cavell should be disqualified because he participated in the "breaches of fiduciary duty and mismanagement" committed by Donna. He contends that because of these alleged breaches of fiduciary duty Donna should be denied her fee as executrix and Cavell should be denied his attorney's fees. He again urged his own attorney's fees be paid from the succession. Paul claims Donna breached her fiduciary duty by participating in the stock sale as curator and not providing information as to how the value of the stock was derived. Finally, Paul argued that it was due to the efforts of his attorney that the value of the estate was increased by annulling the sale of the stock and therefore, his attorney's fees should be paid from the succession.
A hearing on this matter was held on October 16, 2006. In the hearing, Paul argued it is not possible to tell from the bills submitted by Cavell whether he was billing for work done as the succession attorney or work performed as representing the other heirs in Brazan v. Brazan. Cavell stated that all of the fees were for work on the succession and that he was called into court numerous times to be sure the succession was not being adversely affected by other actions that were going on. With regards to the disqualification, Cavell pointed out that the only thing remaining to close the succession is the Judgment of Possession and that no purpose would be served by disqualifying Donna or himself. The trial court then made a finding that Cavell's fees were reasonable and awarded $14,435.00 in attorney fees and that the succession representative fee was authorized by statute.
On October 27, 2006, the court held a hearing as to whether the attorney fees incurred by Paul to annul the sale should be paid by the succession. The court ruled that the succession is not the proper avenue to have Paul's attorney's fees paid on the annulment of the stock sale.
REMOVAL AND FEE OF EXECUTRIX:
A party seeking removal of a succession representative must prove by convincing evidence that the representative breached her fiduciary duty to the succession under LSA-C.C.P. art. 3191 or the existence of one of the grounds for removal enumerated in LSA-C.C.P. art. 3182. Those grounds include disqualification, incapability of discharging the duties of office, mismanagement of the estate or failure to perform any duty imposed by law or court order. LSA-C.C.P. art. 3182.
The trial court only has the power to remove a representative once this showing is made. Succession of Houssiere, 247 La. 764, 174 So.2d 521 (1965). Thereafter, the trial court is not required to remove the representative, but is vested with discretion to determine whether removal is appropriate under the facts of the particular case. Succession of Krushevski, 528 So.2d 743 (La.App. 4th Cir.1988). Absent an abuse of discretion, the trial court's decision regarding removal of the representative will not be disturbed on *57 appeal. In re Succession of LaFleur, 99-1100, (La.App. 3rd Cir.12/8/99), 752 So.2d 237 writ denied, XXXX-XXXX (La.3/31/00), 759 So.2d 74.
Paul's argument relative to the removal of Donna as succession representative centers around this Court's annulment of the sale of the decedent's stock. Paul contends the sale was annulled because it was fraudulent in that it benefited Donna and was not in the decedent's best interest. However, this Court clearly stated the sale was annulled for failure to follow the requirements of C.C.P. art. 4566 B. Thus, the sale was annulled because of legal error. There was no finding of fraud or mismanagement. Clearly, the sale of the stock occurred before decedent died, thus Donna's actions in the sale of the stock was not an act as administrator of the estate. Whether or not the sale of the stock was mismanagement was a factual determination within the discretion of the trial court.
Further, we find that removing the executrix and the succession attorney, Cavell, at this point in the proceedings would serve no useful purpose as this succession is in its final stages. The estate has been administered and all that remains is the final placing and possession and payment of executrix fees and attorney's fees. Replacing the executrix at this juncture would only extend the administration, cause unnecessary delay, and possibly result in unnecessary costs.
Accordingly, we find the trial court did not abuse its discretion in denying Paul's motion to remove Donna and Cavell.
Code of Civil Procedure article 3351 unequivocally states that the executor "shall be allowed" compensation in the amount of 2½ percent of the gross estate, or a greater amount if warranted, unless the testament or agreement by the parties provides for a lesser fee. The legislature has also provided that reduction of the executor fee below 2½ percent, on the basis that the estate is also paying attorney fees, is allowed only in the limited circumstance where "the succession representative serves as an attorney for the succession or for the succession representative." Art. 3351.1
While the Will appointed Donna executrix of the estate, it did not provide for an amount of compensation. Therefore, according to C.C.P. art. 3351, Donna is entitled compensation in the amount of 2½ percent of the gross estate unless there is a showing of mismanagement or that she was also serving as attorney. Having previously determined there was no error in the trial judge's refusal to remove Donna as executrix, we find the trial court did not err in allowing Donna the statutory 2½ percent executrix fee.
ATTORNEY'S FEES OWED TO CAVELL:
It has long been recognized in Louisiana law that an executor of a succession may obtain an attorney to aid in the carrying out of the executor's duties and to defend the succession against adverse claims made against it. Succession of Jenkins, 481 So.2d 607, (La.1986). Courts have also recognized that the costs of such legal representation may be charged to the succession. Atkins v. Roberts, 561 So.2d 837, (La.App. 2 Cir.1990). The courts have made the distinction, however, that where the legal representation is primarily for the personal benefit of the executor and not the estate, such fees may not be paid from the property of the succession. Succession of Haydel, 606 So.2d 42, (La. App. 4 Cir., 1992). Whether or not an attorney's work was for the benefit of the succession estate is a question of fact that cannot be set aside absent manifest error. Id.
*58 The itemized bills submitted by Cavell begin on August 14, 2002, which is itemized as "call from client." The first pleading in the designated appellate record was filed October 1, 2002 by Cavell. This pleading asks that an executor be appointed. The bills continue until June 8, 2006. These itemized bills are over thirty pages long. At the hearing on Paul's motion opposing the attorney's fees, Paul argued the majority of these fees were incurred in annulling the sale of the decedent's stock. Cavell responded that he first became involved in the case when he asked for the appointment of an executor. He explained that over the course of this proceeding he was called into court many times to be sure the succession was not being adversely affected by some of the proceedings in other actions. The court found the attorney fees itemized and charged by Cavell to be reasonable. Having reviewed the record in this matter, we find no abuse of discretion in the trial court's finding that the fees were reasonable and ordering the fees to be paid out of the succession.
ATTORNEY FEES INCURRED BY PAUL:
On appeal, Paul argues that because the work by his attorney increased the value of the estate, the trial court erred in failing to award attorney fees he incurred in having the sale of the decedent's stock annulled. As stated previously in this opinion, Paul has instituted another suit against his siblings and the annulment of the stock sale was accomplished in that suit. During the argument on this motion, Paul's attorney acknowledged that he could seek to have his attorney's fees paid in the other suit and that he had filed a motion to that effect.
In a succession proceeding, an attorney representing particular heirs or claimants has no claim against the estate for his services, even though such services benefited the other heirs. Succession of Meier, 204 So.2d 793, (La.App. 4 Cir., 1967). Fees incurred by an heir attempting to hold the executor of the estate to the standard of care owed by the executor to the succession are not to be paid out of the succession. Succession of Demarest, 418 So.2d 1368, (La.App. 4 Cir.1982), writ denied, 422 So.2d 158 (La.1982).
Accordingly, we find no error in the trial court's determination that the attorney fees incurred in annulling the sale should not be paid by the succession.
CONCLUSION:
For the foregoing reasons, the judgments of the trial court are affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.