| SUCCESSION OF LARRY DAVID MASSENBURG | * | NO. 2025-CA-0332 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-09104, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Rachael D. Johnson, Judge Karen K. Herman)

Demetrie E. Ford, Sr.
ATTORNEY AT LAW
716 Third Street
Gretna, LA 70053

COUNSEL FOR APPELLE/LISARREE MAJORS-MASSENBURG

Robert G. Miller, Jr.
BISSO & MILLER, L.L.C.
3925 N. I-10 Service Road W., Suite 227
Metairie, LA 70002

COUNSEL FOR APPELLANT/RODNEY MASSENBURG, SR.

**REVERSED**
**JANUARY 30, 2026**

KKH
JCL
RDJ Rodney Massenburg, Sr. ("Rodney") appeals the March 27, 2025 judgment,

which removed him as executor/trustee in these succession proceedings and

rendered additional rulings in connection with the decedent's will. For the reasons

set forth below, we reverse.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Larry Massenburg ("Larry") died on July 1, 2020. He never married, and

had an adult daughter, Lisarree Doi Majors-Massenburg ("Lisarree").[1] Larry was

also survived by his brother Rodney and sister Linda Massenburg ("Linda").

Larry executed a will on February 26, 2016, while in the hospital for a

medical procedure. The will made particular bequests totaling $45,000.00 to be

split between his siblings, nieces, and nephews. These bequests are not in dispute.

The will also established a trust for Lisarree, providing that the assets of the

trust be distributed to her at $30,000.00 annually through a monthly allocation of

$2,500.00. The trust would terminate upon expiration of the trust's funds. Rodney

was named executor of the estate and trustee of the testamentary trust set up for

---

[1] Lisarree's date of birth is listed as October 6, 1990.

1

Lisarree. Finally, the will provided that Larry's home was to be sold, with the proceeds to be included in the estate.

On June 15, 2021, Lisarree filed a petition to remove Rodney as executor and trustee. It was asserted therein that Rodney failed to file the will for probate;[2] failed to pay Lisarree $2,500.00 per month pursuant to the will; and failed to pay the bills of the succession.

The petition for removal of the executor was heard on November 15, 2024. Judgment was rendered on March 27, 2025, removing Rodney as executor and trustee. The judgment also ordered that Lisarree could remain living in the home, and that all of the decedent's bank accounts and retirement accounts belong to the testamentary trust.

At trial, Lisarree brought up two allegations/issues not raised in the pleadings. Namely, that Larry made an oral agreement with Rodney to not sell the house when died; and that Larry's Morgan Stanley retirement account ("Account") would be managed for the benefit of Lisarree, *i.e.*, the Account would be part of the estate/trust.[3]

Regarding the sale of the home, testimony was provided by Lisarree, Linda, and Rodney. Lisarree acknowledged that the will instructed that the home was to be sold. However, she stated that her father "intended" to change his will to allow her to remain living in the home. As evidence, she introduced an unsigned and

---

[2] Rodney filed a Petition to File and Execute Notarial Testament on October 23, 2020.

[3] The record reflects that the Account balance was approximately $400,000.00.

undated handwritten note on the back of an envelope that stated: "I am in my house. Don't sell when I die." A copy of the envelope was introduced into evidence. Linda identified Larry's handwriting on the envelope. She testified that both Larry and Rodney made notes on the envelope, in her presence, when Larry was hospitalized in 2016. She did not actually see what was written on the envelope until years later.

As to the Account, Linda testified that it was her understanding that Larry wanted his retirement accounts to go to Lisarree. She stated that Larry and Rodney had this discussion when Larry was hospitalized in 2016. Linda testified that the envelope contained Larry's notes on certain things he wanted taken care of. In particular, she noted that Larry wrote the words Morgan Stanley along with his agent's name.[4]

Rodney testified that he is the primary beneficiary on the Account and therefore, by law, it did not become an asset of the succession. In support, Rodney introduced copies of certain Morgan Stanley documents reflecting that he is listed as beneficiary. Larry's signature on the "Client Acknowledgement" form is dated March 16, 2013. Lisarree did not dispute the beneficiary designation.

Calvin Smith, the attorney who prepared and notarized the will in 2016, testified that it is was "very clear" to him that after the distribution of the particular legacies, Larry intended "the remainder of the estate, including the home, bank accounts, the retirement accounts, all were going to go to his daughter." However,

---

[4] The notes on the envelope contain no instruction regarding the Account, only the words Morgan Stanley, a phone number, and the agent's name.

Smith further testified that he could not say that there was a "direct conversation regarding Morgan Stanley." Smith stated he could not recall if he discussed with Larry whether or not the Account contained or designated a beneficiary. He indicated that subsequent to the signing of the will, they were scheduled to "meet again" because Larry wanted to make some additional changes. The will was never changed; he died four years later.

In his defense of his petition to remove him as executor and trustee, Rodney testified that the will was filed for probate on October 23, 2020, and that all of the estate's bills had been paid. He further testified that he did not pay Lisarree the monthly $2,500.00 as provided in the will because after paying the particular bequests and the bills of the estate, *e.g.*, taxes, insurance on the home, Larry's medical bills, there was no money left to pay Lisarree. Finally, he stated that Lisarree thwarted his efforts to sell the home.

Lisarree testified that she moved into Larry's home the day after his funeral. She acknowledged that she refused to allow the real estate agent to enter the home in order to take pictures for purposes of appraisal and sale. Lisarree admitted that she wanted to stop the sale.

Rodney testified that it was his understanding he could not manage the Account for Lisarree because he was the beneficiary on the Account and that Larry never changed the designation. Rodney further denied any agreement with Larry to manage the Account for Lisarree. He only remembered Larry discussing his home and bank account while signing the will. Rodney explained that Larry told

him to "go by the will … the Morgan Stanley was separate." Finally, when asked if he found it unusual that Larry excluded Lisarree from the Account, he stated no, "[b]ecause him and his daughter really were not close."

At the conclusion of the hearing, the trial court ordered the parties to file post-trial memoranda, ordered Rodney to file an Accounting[5], and ordered Lisarree to allow access to the home for appraisal, stating "because the will said it was supposed to be sold. And apparently you have something to do with why that process has not proceeded."

Judgment was rendered on March 27, 2025, in pertinent part as follows:

> After considering the pleadings, the evidence, the testimony of the witnesses, and the law, the remainder of the estate belonging to Larry Massenburg, both movable and immovable property including by not limited to any and all bank and ***retirement accounts***, minus the particular legacies that have already been distributed, belong to the testamentary trust created for the benefit of Lisarree Majors-Massenburg and therefore: (Emphasis added).

> **IT IS ORDERED, ADJUDGED, AND DECREED** that Rodney Massenburg be removed as Executor of the estate belonging to Larry Massenburg, and as Trustee of the Lisarree Majors-Massenburg Trust.

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Lisarree Majors-Massenburg be allowed to continue to live in the home located at 7616 Primrose Dr., New Orleans, LA 70127.

On appeal, Rodney asserts that the trial court erred in: 1) finding that the will was amended by verbal testimony regarding the sale of the home; 2) finding that the Account was a probate asset; and 3) removing him as executor and trustee of the estate.

---

[5] The Accounting of Independent Executor was filed on December 13, 2024, itemizing the payments made on behalf of the succession from September 2, 2020 to November 20, 2024, and representing a balance of $135.33.

**DISCUSSION**

**Assignment of Error No. 1:** **The court committed legal error when it held that the testament was amended by verbal testimony and an unsigned and undated note on an envelope to delete the provision of his will which required the sale of the house after he died.**

Rodney correctly points out that Section 1.01 of the will provides that Larry's residence located at 7616 Primrose Drive in New Orleans "be sold by my executor, the proceed shall be included in the remainder of my estate." He argues that the trial court erred in ordering that Lisarree be allowed to continue living in the home. We agree.

The trial court stated in Reasons for Judgment that Linda "presented an original envelope on which decedent wrote down several changes he wanted done with his estate. One of those changes he wrote was not to sell his house after he dies, even though the will says to sell it."

The record demonstrates, however, that although Larry may have wanted to change his will to provide that his residence would not be sold after his death, it is undisputed that he did not revoke or modify the will. Pursuant to La. C.C. art. 1608(1), a revocation of a legacy or any other testamentary provision must be declared "in one of the forms prescribed for testaments." Moreover, "[a]ny other modification of a testament must be in one of the forms prescribed for testaments." La. C.C. art. 1610.

"The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null." La. C.C. art. 1573. Pursuant to La. C.C. art. 1574, "[t]here are two forms of testaments: olographic and notarial." La. C.C. art. 1575 provides that "[a]n olographic testament is one entirely written, dated, and signed in the handwriting of the testator." La. C.C. art. 1576 provides in

6

pertinent part that a notarial testament shall be prepared in writing, dated, and executed before a notary and two competent witnesses.

Here, the trial court's ruling that Lisarree would remain in the home is contrary to the law and evidence. It is evident that Larry did not modify or revoke his will in the manner prescribed by law as set forth above. The note on the envelope, to which the trial court relied, is neither signed nor dated by Larry. As such, it was legal error on the part of the trial court to find that the will was modified with respect to the home.

**Assignment of Error No. 2: The court committed legal error when it found that the Morgan Stanley Individual Retirement Account was a probate asset and passed to the testamentary trust via the succession.**

We first note that the trial court acknowledged that the Account listed Rodney as the primary beneficiary. However, in ruling in favor of Lisarree, *i.e.*, finding that the Account would be included in the estate, the trial court's Reasons for Judgment stated as follows:

> Louisiana has a strong public policy interest in honoring a decedent's wishes. Decedent made known with both complete and incomplete documents that his intention was that the remainder of all of his assets go to his daughter, especially his biggest asset, his retirement account. He made his intentions known to his attorney who drafted the will, and to his family members. It is illogical to think that decedent would go to the trouble to make detailed preparations for his young daughter after his death, only to have the biggest asset of his estate go to his brother. The testimony surrounding his written wishes made clear that he wished to change things with his estate, but he unfortunately passed away before the changes could be formalized. *Decedent's verbal intentions made to multiple people, confirm that the Morgan Stanley retirement account was for the benefit of his daughter, and the decedent's intentions should be honored.* It is manifestly unjust and unfair given the totality of circumstances that the person who was supposed to get everything, gets nothing. (Emphasis added).

Rodney submits that the trial court erred as a matter of law in finding that the beneficiary designation on the Account was changed by the intent of the

7

decedent and that the proceeds of the Account would be included in the succession. Based on the record before us, we find merit in this argument.

Larry named Rodney as beneficiary on the Account in 2013. This designation was never formally changed.

La. R.S. 9:2449(A) provides in pertinent part that "[a]ny benefits payable by reason of death from an individual retirement account … shall be paid as provided in the individual retirement account agreement to the designated beneficiary of the account." Section (B) further states that "[t]he provisions of this Section shall apply even when the decedent designates a beneficiary by last will and testament."

Our courts have recognized that the non-probate disposition of a retirement account is one of the very limited specific exceptions to the general rule that property owned by a decedent at death will pass to the heirs via succession. *In re Succession of Catchings*, 2022-0460, p. 9 (La. App. 5 Cir. 9/6/23), 370 So.3d 1251, 1257-58 (citing *Succession of Angus*, 54,180, pp. 6-7 (La. App. 2 Cir. 1/12/22), 333 So.3d 555, 560; *Succession of Schimek*, 2019-1069, pp. 17-18 (La. App. 4 Cir. 6/10/20), 302 So.3d 78, 91).

In the present case, there is no evidence in the record that Larry changed the beneficiary designation *with* Morgan Stanley. There is also no evidence, according to the testimony of his attorney, that Larry sought legal advice concerning the proper procedure required to make such a change. As stated above, Smith could not recall whether they specifically discussed Morgan Stanley.

Counsel for Lisarree concedes that Larry wished to make changes to his will to put the Account in trust, but that was never done. Rather, she maintains that Rodney and Larry had a verbal contract to use the Account for her benefit and, accordingly, it was proper for the trial court to use extrinsic evidence to interpret

8

the decedent's intent. In support, Lisarree relies on La. C.C. art. 1611, which provides that "the intent of the testator controls the interpretation of his testament." However, we note that article 1611 further stipulates that "[i]f the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The … rules of interpretation apply only when the testator's intent cannot be ascertained from the language of the testament."

This is not the case here; the language of the testament is clear. Therefore, the ruling of the trial court based on the supposition of Larry's intent was improper. Moreover, the record does not support the trial court's reasoning that Larry "unfortunately passed away before the changes could be formalized." Larry lived another four years after the will was signed and the notes were made on the envelope.

Additionally, as explained above in connection with the argument made regarding the sale of the home, "verbal" changes to a will are not legally recognized. Accordingly, we find that the trial court erred in ruling that the Account belongs to the testamentary trust.

**Assignment of Error No. 3:  The court committed legal error when it removed Rodney as independent executor and testamentary trustee without a finding that Rodney breached his fiduciary duty to the succession under La. C.C.P. art. 3191 or the existence of one of the grounds for removal enumerated in La. C.C.P. art. 3182.**

La. C.C.P. art. 3191(A) provides:

> A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.

La. C.C.P. art. 3182 provides in pertinent part:

The court may remove any succession representative who is or has become disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Article 3097(4), or has failed to give notice of his application for appointment when required under Article 3093.

As this Court stated in *Succession of Franz*, 2019-0503, pp. 13-14 (La. App. 4 Cir. 1/29/20), 364 So.3d 119, 128:

"A party seeking removal of a succession representative must prove by convincing evidence that the representative breached her fiduciary duty to the succession under LSA-C.C.P. art. 3191 or the existence of one of the grounds for removal enumerated in LSA-C.C.P. art. 3182." *In re Succession of Brazan*, 2007-566, p. 6 (La. App. 5 Cir. 12/27/07), 975 So.2d 53, 56. "Those grounds include disqualification, incapability of discharging the duties of office, mismanagement of the estate or failure to perform any duty imposed by law or court order. LSA-C.C.P. art. 3182." *Id.*

Further, the trial court only has the power to remove a succession representative once "there is convincing evidence of an act or acts of mismanagement." *Succession of Houssiere*, 247 La. 764, 773, 174 So.2d 521, 525 (1965). "Thereafter, the trial court is not required to remove the representative, but is vested with discretion to determine whether removal is appropriate under the facts of the particular case." *In re Succession of Brazan*, 2007-566, p. 6, 975 So.2d at 56 (citing *Succession of Krushevski*, 528 So.2d 743 (La. App. 4th Cir. 1988)). "Absent an abuse of discretion, the trial court's decision regarding removal of the representative will not be disturbed on appeal." *Id.* (citing *In re Succession of LaFleur*, 1999-1100, (La. App. 3 Cir. 12/8/99), 752 So.2d 237, writ denied, 2000-0446 (La. 3/31/00), 759 So.2d 74).

Moreover, as stated in *Succession of Pittman*, 2019-0683, p. 9 (La. App. 4 Cir. 7/1/20), 413 So.3d 1046, 1051:

The removal of a trustee is governed by La. R.S. 9:1789, which states in pertinent part, "[a] trustee shall be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause." As interpreted by Louisiana jurisprudence, "[t]hat statute contemplates more than a mere technical violation of the Trust Code as grounds for removal of a trustee." *Martin v. Martin*, 95-0466, p. 4 (La. App. 4 Cir. 10/26/95), 663 So.2d 519, 521 (citing *Curtis v. Breaux,* 458 So.2d 582 (La. App. 3rd Cir. 1984)). Sufficient cause for the removal of a trustee requires allegations of conflict of interest,

10

hostility, and impairment or interference with proper administration of the trust. *McCaffery v. Lindner*, 18-163, p. 5 (La. App. 5 Cir. 12/27/18), 263 So.3d 1205, 1210. "Mere hostility or incompatibility between the trustee and a beneficiary is not sufficient grounds for removal; there must be factual allegations that the hostility interfered with or adversely affected the administration of the trust for it to be a reason for removal." *Fertel v. Brooks*, 02-0846, p. 10 (La. App. 4 Cir. 9/25/02), 832 So.2d 297, 304.

In the present case, the record demonstrates that Rodney successfully refuted Lisarree's initial assertions that he failed to file the will for probate and that he failed to pay the bills of the succession. It appears from the trial court's reasons for judgment that the basis for removal was Rodney's failure to honor Larry's intentions (and their verbal agreement) that Rodney would manage the Account in a representative capacity, dispersing funds to Lisarree through the trust.

As stated above, pursuant to La. R.S. 9:2449(A), benefits from an individual retirement account shall be paid in accordance with the account agreement. Larry designated Rodney as the beneficiary, which essentially removed the Account from the estate, relieving him from any duty to manage the Account for Lisarree.

Based on our review, Lisarree presented no clear and convincing evidence that Rodney breached his fiduciary duty as executor. In the same respect, sufficient cause for removal of Rodney as trustee has not been shown. Accordingly, we find that the trial court abused its discretion in removing Rodney as the executor/trustee.

**CONCLUSION:**

For the foregoing reasons, the March 27, 2025 judgment is hereby reversed.

**REVERSED**

11