Judge Madeleine M. Landrieu
_JjThe judgment appealed from addresses certain disputed issues between the widow and two of three adult children of the late Charles B. Fanz, Jr. Mr. Fanz died testate on October 22, 2011. His last will and testament includes provisions regarding Ana Fanz, his surviving spouse; Charles B. Fanz, III (“Chuck”), Tammy Fanz and Tanya Fanz, his three adult children from a previous marriage; and Mildred Fanz, his child with Ana Fanz, who was a minor at the time of her father’s death. The family’s principal asset is a business called “Fanz Mobile Home Estates,” which is located in St. Bernard Parish.
Shortly after the decedent’s death, his surviving spouse and three adult children filed a “Petition to Open Succession and for Authority to Search for Testament.” The last will and testament of the decedent was located in a safe deposit box at a local bank. In the will, the decedent named Ana, Chuck, Tammy and Tanya as succession representatives with the authority to serve as independent administrators.[1] The four of them jointly filed a petition to be confirmed as ^independent executors of the decedent’s succession and to serve without bond. The trial court confirmed the four petitioners as independent executors without bond. By judgment dated March 13, 2012, Ana was given authority on behalf of the succession to run the daily operations of Fanz Mobile Home Estates pending further orders of the court. This family business has been operating as a succession asset since the decedent’s death.
On November 15, 2013, a detailed descriptive list of assets and liabilities of the succession was filed. The list was signed by all succession representatives except Chuck. On June 13, 2014, Ana filed a motion to traverse the detailed descriptive list. In Ana’s motion and another motion filed by the succession on July 11, 2014, the trial court was asked to make certain determinations regarding the decedent’s estate.
Pursuant to Ana’s motion, the trial court agreed to determine the following issues at trial: “1) the proper designation, description and location of property more particularly known as 2100 West Fanz Road; 2) a determination as to whether a reimbursement of $88,115.25 should be awarded to Mrs. Fanz [Ana]; 3) the determination of the specific bequest to Ana Z. Fanz of corporeal movables, and 4) the determination of the status of the rights of the decedent’s minor child to inherit from the estate. Pursuant to the motion filed on behalf of the succession, the trial court also ordered that the following issues would be determined at trial: “1) the proper determination of the forced portion of the estate of Charles B. Fanz, Jr.; 2) the proper determination as to how the Succession 'will satisfy the forced 1 ¡¡portion to go to the forced heir, Mildred B. Fanz; and 3) the determination of the value of the assets and debts of the Succession of Charles B. Fanz, Jr. at the time of his death.”
On July 18, 2014, Chuck and Tammy, as independent co-executors, filed a petition for an accounting and for breach of fiducia *426 ry duty against Ana, individually, in her capacity as a duly appointed co-executrix of the succession and as the court-appointed sole manager of the daily operations of the family business. They alleged that Ana breached her fiduciary duty to the succession by usurping a business opportunity that should have first been offered to the family business. Specifically, they allege that after Ana was appointed manager of the family business, she purchased numerous trailers for herself and located these on the business property. According to Chuck and Tammy, the business had ample funds to purchase those same trailers, and Ana should have offered the business the opportunity to purchase the trailers before she purchased them in her individual name.
Chuck and Tammy subsequently filed a first amended petition for an accounting and breach of fiduciary duty, and requested that attorney’s fees and expert costs incurred by them be paid by the succession, arguing that the issues they raised are for the benefit of the succession as a whole and not only for the benefit of the petitioners. They also alleged that Ana had failed to adequately account for succession funds and took possession of funds that did not belong to her. They requested that Ana be removed as manager of the business due to [conflicts of interest and other alleged actions not in the best interest of the business. Chuck and Tammy also asked for reimbursement to the succession of certain funds they allege Ana improperly took from the succession for expenses not related to the succession.
Following trial, by judgment dated October 1, 2015, the trial court adjudicated numerous disputed issues between the parties. The adjudications relevant to the instant appeal include:
1) The “domiciliary residence” bequeathed to Ana in the last will and testament is the area designated as Lot F-l-D in a survey by Thomas Reed, which was introduced into evidence at trial as Exhibit 5;
2) The voting procedure for succession representatives is that Chuck, Tammy and Tanya each get a one-sixth (1/6) vote and Ana gets a one-half (1/2) vote;[2]
8) Denial of the claims by Chuck and Tammy for reimbursement of $25,000.00 taken from the Mobile Home account and placed in an account for Mildred, and of $40,000.00 received by Ana as reimbursement for funds expended by her for the business;
4) Ana must cease using Fanz Mobile Home Estates property to rent out any trailers that are personally and separately owned by her;
5) The use of business equipment by Ana for personal and/or separate endeavors is not permitted;
6) Recognition that the business, prior to the death of the decedent, and the succession, after the decedent’s death, owed Ana a debt in the amount of $88,000.00;
k7) Denial of the claim for attorney’s fees by various heirs, except for *427 fees due to the lawyer representing all heirs together in connection with services rendered for the benefit of the succession;
8) Denial of the request to remove Ana as operator of the family business;
9) Acceptance of the descriptive list filed on November 15, 2013, subject to rulings set forth in this judgment;
10) Ana must begin paying all of her own expenses unless the trial court authorizes payments through the business while it is being operated as a succession asset; and
11) Insufficient evidence existed to support claims against Ana for alleged theft of property belonging to the succession or the mobile home park business.
Chuck and Tammy appealed the trial court judgment and raised the following assignments of error:
1. Whether the trial court erred as a matter of law by finding that the proper voting procedure for the succession representatives pursuant to the terms of the Will was that Ana gets a 1/2 vote, and Chuck, Tammy and Tanya each get a 1/6 vote.
2. Whether the trial court erred as a matter of law in denying the claims by the succession for an accounting owed to the succession by the decedent’s mandatary, Ana, based on the trial court’s erroneous conclusion that the claims did not belong to the succession.
3. Whether the trial court erred as a matter of law in recognizing a debt owed to Ana of $88,000 despite the fact that Ana had waived all reimbursements in the matrimonial agreement between her and the decedent.
4. Whether the trial court erred as a matter of law in failing to award Chuck and Tammy, acting in their capacity as succession representatives, attorney’s fees and expert witness costs from the succession assets.
5. Whether the trial court committed manifest error in failing to remove Ana as operator of the business and as succession representative despite the fact that the trial court recognized that she was competing with the business and that she had breached her fiduciary duties.
_J|6. Whether the trial court erred as a matter of law in failing to order Ana to reimburse the succession for her personal expenses paid by the succession.
7. Whether the trial court erred as a matter of law and fact by finding that Ana had properly accounted for her expenditures in running the business.
8. Whether the trial court erred as a matter of law in failing to require Ana to account to the succession for rents she received from renting her trailers while trailers belonging to the succession remained vacant.
9. Whether the trial court erred as a matter of law in failing to find Ana had usurped a business opportunity of the business by buying eight trailers personally, while she was operating the business, instead of offering them to the business for purchase.
10. Whether the trial court erred as a matter of law by not awarding damages to the succession for Ana’s breach of her fiduciary duties despite finding that Ana breached some of her duties.
Ana also appealed the judgment. In her sole assignment of error, she argues that the trial court erred in limiting the award *428 to her of the domiciliary residence as only that portion of property known as Lot F-1-D on the survey of Thomas Reed, and not also awarding her the contiguous land customarily used and associated with the residence.
We initially note that the judgment appealed from is a partial final judgment, which was not designated as immediately appealable by the trial court under La. C.C.P. art. 1915B. The judgment is not a final judgment under either La. C.C.P. art. 1915A or La. C.C.P. art. 2974 (appeals from certain orders or judgments rendered in succession proceedings.) An appeal erroneously taken on a nonappealable judgment may be convertéd to an application for supervisory writ by the appellate court, but only when the motion for appeal has been filed within the thirty-day period allowed for the filing of an application for supervisory writ |7under Rule 4-3 of the Uniform Rules — Courts of Appeal. See Ordoyne v. Ordoyne, 2007-0235, p. 4 (La.App. 4 Cir. 4/2/08), 982 So.2d 899, 902. In this matter, the motion for appeal was filed within thirty days of the date of the notice of judgment. Accordingly, to the extent any decree is not immediately appealable without the trial court’s certification as such, we exercise our discretion and convert the instant appeal to an application for supervisory writ.
We first address the assignment of error by Ana regarding the trial court’s determination of what was included in the bequest to her of the domiciliary residence. In Article 1.1(A) of the will, the decedent made the following specific bequest to Ana:
If Ana survives me, I bequeath to her, in full ownership, my interest in:
Our domiciliary residence at the time of my death, the land upon which it is situated and the land contiguous thereto that has customarily been used and associated with the residence, which residence and land is currently located at 2100 W. Fanz Road, St. Bernard, LA 70085.
As stated .above, the trial court determined that the domiciliary residence bequeathed to Ana consists of the area designated as Lot F-l-D on the survey by Thomas Reed. In reasons for judgment, the trial court stated that Lot F-l-D is the area the decedent subdivided and used in connection with his homestead exemption. The court stated that this area is the homestead and comprises the family dwelling. The trial court acknowledged that his finding creates a problem for the heirs in that part of the trailer park garage/warehouse encroaches on Lot F-l-D. However, the court stated that the parties will have to resolve this issue in the future, and a re-subdivision of the property will be necessary due to the encroachment problem.
RAna argues that the decedent’s bequest to her of the domiciliary residence includes not just the residence and land bearing the municipal address of 2100 W. Fanz Road (Lot F-l-D), but also additional property comprising “the land contiguous thereto that has customarily been used and associated with the residence.” According to Ana, the land outlined in yellow on an aerial photograph of the Fanz property, as shown on Exhibits AF-3 and AF-29, is the land the decedent intended in his bequest. She notes that the area outlined in yellow on the aerial photograph was fenced, and separated the residence from the area of the family property used for the mobile home park. This area also included a garage/warehouse and another house referred to at trial as the “yellow house,” which was originally the home of the decedent and his first wife. Testimony at trial by Ana, Mildred, and the decedent’s niece, Sylvia Guillot, established that this land has been used by the Fanz family as a play *429 area for children and for parties, holidays, and other family gatherings for many years. Two electricians testified that electrical outlets were installed on this contiguous property for the use of lighted Christmas decorations. Ana argues that the fact that the contiguous property included a garage/warehouse used for the benefit of the mobile home park does not mean that the area was not also customarily used and associated with the residence.
Chuck and Tammy argue that the trial court was not manifestly erroneous in determining that the specific bequest of the domiciliary residence to Ana is limited to Lot F-l-D and the residence thereon. They further argue that this bequest did not include the contiguous area where the garage/warehouse and yellow ■ house are located, noting that those two buildings have different municipal addresses than the residence located at 2100 W. Fanz Road. They also argue that the section of the IflWill including a bequest to Ana of “[A]ll corporeal movables” should be interpreted as not including the garage/warehouse in the bequest to her of the domiciliary residence because the garage/warehouse housed items used for the operation of the mobile home park.
The intent of the testator controls the interpretation of his testament. “If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit.” La. C.C. art. 1611A “If the identification of an object given is unclear or erroneous, the disposition is nonetheless effective if it can be ascertained what object the testator intended to give. If it cannot be ascertained whether a greater or lesser quantity was intended, it must be decided for the lesser.” La. C.C. art. 1613 In applying these rules, the court may be aided by any competent evidence. La. C.C. art 1611A
The record on appeal establishes that the decedent subdivided his St. Bernard Parish real property in 1998, hired a surveyor to prepare a survey setting forth the metes and bounds of the subdivided lots, and the Parish of St. Bernard approved the resubdivision that same year. ■The survey, but not the legal descriptions of the lots, appears in the appellate record.[3] It'is a well-settled rule of jurisprudence that a survey prevails over a legal description.[4] The decedent’s last will and testament states in pertinent part 'that he bequeathed to Ana the “residence and land currently located at 2100 W. Fanz Road, St. Bernard, LA 70085.” Only Lot F-l-D from the 1998 subdivision bears that address. This is also the address for the homestead exemption for the decedent’s domiciliary residence.
ImThe trial court was called upon to determine what “the land contiguous thereto that has customarily been used and associated with the residence” was intended to mean. The trial court obviously believed by virtue of the rendered judgment that this bequest included only Lot F-l-D. The trial court apparently concluded and reasoned that since the decedent ■had caused his property to be subdivided roughly 4½ years before he executed his last will and testament and chose to refer in his testamentary bequest to an address in lieu of the lot number, it meant only Lot F-l-D. The trial court obviously concluded that the encroachment of a structure constructed after the testator executed his testament over the line of Lot F-l-D onto an adjoining lot was of no moment and *430 created only a servitude that would remain in effect for only so long as the encroaching structure on the adjoining lot remained in existence.
Paul Waldman, Esq., the lawyer who drafted the testament and notarized it, was listed as a witness but not called at trial. Thus, we have no direct evidence to establish the testator’s intent on this issue. It is clear that the testator intended to bequeath to Ana his domiciliary residence. After considering the circumstantial evidence and testimony at trial, the trial court found that this domiciliary residence was in fact Lot F-l-D. As this determination is supported by the record, we find no manifest error. It is reasonable to conclude that had the decedent intended to bequeath to Ana properties other than the one with the municipal address of 2100 W. Fanz Road, he would have stated so in this bequest. This is in keeping with Civil Code art. 1613 (“If it cannot be ascertained whether a greater or lesser quantity was intended, it must be decided for the lesser.”)
In the first assignment of error by Chuck and Tammy, they argue that the trial court erred in finding that the proper voting procedure for the succession ^representatives pursuant to the terms of the will is that Ana has a one-half (1/2) vote and Chuck, Tammy and Tanya each have a one-sixth (1/6) vote. We agree that this was error.
Article 5.1(A) of the will contains the following language regarding the appointment of succession representatives and their voting rights:
Appointment of succession representative. I name and appoint as my succession representative Charles B. Fanz, III, Tammy Fanz, and Tanya Fanz who together shall have one-half (1/2) of the votes, and Ana B. Fanz who shall have one-half (1/2) of the votes. If Ana B. Fanz is unable or unwilling to serve as a succession representative, Mildred F. Fanz if she has attained the age of majority, or upon attaining the age of majority, shall serve as a succession representative, in which case all succession representatives shall have an equal vote. My succession representative shall serve as an independent administrator in accordance with Louisiana Code of Civil Procedure article 3396, as amended.
In arguing that the trial court erred in ruling that this voting rights provision gives Chuck, Tammy and Tanya each a 1/6 vote as succession representatives, Chuck and Tammy cite by comparison the trust voting procedure in the will, which specifically gives Chuck, Tammy and Tanya each a 1/6 vote when the assets of the succession are in the trust authorized in the will. The voting procedure for initial trustees is set forth in Article 3.1(D) as follows:
Initial trustees. The trustees of the Trust shall be Charles B. Fanz, III, Tammy Fanz, and Tanya Fanz who shall have one-sixth (1/6) of the votes each except as otherwise specified below, and Ana B. Fanz who shall have one-half (1/2) of the votes, except as otherwise specified below.
The language in the clause regarding voting rights for succession representatives differs from the language in the clause regarding voting rights of initial trustees of the Charles B. Fanz Trust, to which the decedent bequeathed the majority of his estate. The voting rights provisions of the two clauses are not | ^“essentially the same,” as argued by Ana and in the brief filed on behalf of the “Estate of Charles B. Fanz, Jr.”[5]
*431 As stated earlier, “[Cjourts must seek to give meaning to all testamentary language in a will and avoid any interpretation that would render the language meaningless.” In re Succession of Smith, 47,023, p. 3 (La.App. 2 Cir. 6/13/12), 93 So.3d 788, 790. The decedent set forth different voting procedures for when the estate is in the succession phase and when it is in the trust phase. During the succession phase, and before the trust can be funded, Chuck, Tammy and Tanya are required to act together to exercise their 1/2 vote. To interpret this provision otherwise would render the word “together” in the “Appointment of succession representative” clause meaningless. The fact that requiring Chuck, Tammy and Tanya to exercise their 1/2 vote together may result in a stalemate does not render this voting requirement invalid.
We conclude that the language in the will is clear and unambiguous that the voting rules for the succession phase are different from those to be implemented for the trust phase of the decedent’s estate. If Chuck, Tammy and Tanya are unable to act together regarding their 1/2 vote on matters related to the succession, or if they act together and their 1/2 vote is adverse to Ana’s 1/2 vote while she is able and willing to serve as a succession representative, then the representatives will have to present the issue to the trial court for it to decide what action to take to |1sensure that the succession is properly concluded.[6] When the trust is ultimately funded, Chuck, Tammy and Tanya will each have a separate 1/6 vote for matters pertaining to the trust.
Based on the wording of Article 5.1(A) of the will, we conclude that the trial court erred in ruling that Chuck, Tammy and Tanya each have a separate 1/6 vote as succession representatives. We reverse that portion of the trial court judgment, and render judgment holding that Chuck, Tammy and Tanya “together” shall have one-half (1/2) of the votes as succession representatives.
Chuck and Tammy next argue that the trial court erred in denying their claim that Ana owed reimbursement to the succession for $25,000.00 taken from the business account and placed in Mildred’s account, and for $40,000.00 that Ana took from the decedent’s account as reimbursement for funds that she said had been expended by her for the business. In reasons for judgment, the trial court stated that he was denying these claims for reimbursement to the succession because these financial actions were taken by Ana prior to the death of the decedent and while acting with a procuration from him. The court further stated that while these actions could possibly form the basis for a claim via other proceedings, the claims are not part of the succession.
Chuck and Tammy argue that the funds withdrawn by Ana are not her funds, and she ■ had no right to withdraw these amounts without the decedent’s express authority. Ana testified at trial that the $25,000.00 amount represented funds that the decedent, before his death, told Ana to take from his account to provide for 1 uMildred’s education. According to Ana, she took the funds from the decedent’s personal account, for which she had signature authority, and mistakenly deposited the funds into the business account; she then took the funds from the business account and placed them into Mildred’s account, which was the decedent’s intent. *432 She testified that the funds never belonged to the business. She said she straightened the matter out and redirected the funds into the account for Mildred as she was verbally authorized to do by the decedent.
As for the $40,000.00 taken by Ana from the decedent’s account days before his death, she claimed that this amount was for reimbursement of funds expended by her for the business. Chuck and Tammy argue that these funds were the separate property of the decedent, and there was no evidence that he authorized Ana to make this withdrawal. They note that the decedent had a power of attorney, with Ana, Chuck, Tammy and Tanya designated as co-mandataries. Ana argues that she was not acting pursuant to the power of attorney when she wrote the $40,000.00 check. She testified that while the decedent was still alive, he authorized her to take this amount as reimbursement for monies owed by him to her.
“In contests over testaments, the factual findings of the trial court are afforded great weight and cannot be disturbed on appeal in the absence of manifest error,” In re Succession of Costello, 2000-2672, p. 4 (La.App. 4 Cir. 2/13/02), 811 So.2d 63, 66, citing In re Succession of Fellman, 1996-1738 (La.App. 4 Cir. 8/6/97), 698 So.2d 477. Resolution of conflicts in testimony and credibility determinations in succession proceedings are within the province of the trial court, and should not be overturned on appeal unless manifestly erroneous or clearly wrong. In re Succession of Boisseau, 33,861, p. 6 (La.App. 2 Cir. 9/27/00), 768 So.2d 743, 748. The trial court obviously found Ana’s testimony to be credible and accepted her explanation as to why she had authority to write the $25,000.00 and $40,000.00 checks at issue. We cannot say the trial court erred in doing so. This assignment of error is without merit.
Chuck and Tammy next argue that the trial court erred in recognizing Ana’s claim for reimbursement from the succession of $88,000.00 (both parties agree that this disputed claim actually totaled $88,115.25). In the judgment, the trial court recognized that a debt of $88,000.00 is owed to Ana, and that this debt was owed by the family business prior to the death of the decedent and by the Succession after his death. The reasons for judgment do not include any further explanation of this award, but the record shows that this amount represents payments made to Ana by BP p.l.c. in 2010 for the rental of her separately-owned trailers. Ana made a claim for reimbursement of this amount in her motion to traverse the detailed descriptive list of assets and liabilities.
Before we address the merits of this argument, we note that Chuck and Tammy filed, in this Court, an exception of prescription as to Ana’s claim for reimbursement of BP rental income. Their argument is that these funds were loans that Ana made to the decedent, and therefore, this falls under the category of an open account with a three-year prescriptive period from the date of the loan under La. C.C. art. 3494. Because the rental income was collected in 2010, Chuck and Tammy argue that Ana’s claim for reimbursement had prescribed before she asserted this claim in 2014. Ana argues that her reimbursement claim for the BP rental income is actually an action for partition, which is imprescriptible under La. C.C. art. 817.
hi/The exception of prescription was filed for the first time in this Court, as allowed under La. C.C.P. art. 2163, which states:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, *433 and if proof of the ground of the exception appears of record.
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the ease be remanded to the trial court for trial of the exception.
Ana filed a motion to remand the exception of prescription to the trial court for a hearing, or in the alternative, to deny the exception. Because the issue of Ana’s request for reimbursement for rental income received from BP was fully litigated at trial, we find no need to remand this matter to the trial court for a hearing on the exception of prescription.
The record shows that the rental income at issue was deposited into the family business account and commingled with funds belonging to the business. Ana testified that rents totaling $88,115.25 that were received from BP and deposited to the business account were her separate property because they represented income earned on trailers that were her separate property. She said it was always the decedent’s intention to reimburse these funds to her. While there was no written agreement that characterized these funds as her separate property, counsel for Chuck and Tammy stipulated at trial that trailers owned separately by Ana were included in the rental agreement with BP. More importantly for purposes of the exception of prescription, Chuck and Tammy did not establish that the claim by Ana was a claim on a suit for an open account or that she was seeking to recover on a loan made by her to the decedent or to the family business. Accordingly, we overrule the exception of prescription.
|17As to the merits of this claim, Ana asserts that she is owed $88,115.25 as reimbursement for the trailer rentals to BP because included in these rentals were several mobile homes owned separately by her. She testified at trial that the decedent signed a contract with BP in 2010 for the trailer rentals, which also included her separately-owned trailers, but that the decedent kept all of this rental income in the business account. Ana testified that the decedent promised her that he would reimburse her for these amounts later, but had not done so at the time of his death.
Chuck and Tammy argue on. appeal that the rental income from BP was the decedent’s separate property, and Ana is not entitled to reimbursement for the amounts claimed because the decedent and Ana had a prenuptial agreement agreeing to be separate in property. However, as noted above, counsel for Chuck and Tammy stipulated at trial that trailers owned separately by Ana were included in the rental agreement with BP.
Ana’s claim for reimbursement .for the BP trailer rentals in 2010 was not included in the detailed descriptive list filed in 2013. Her explanation for this omission was that she forgot about these funds that were owed to her until Chuck and Tammy raised claims against her regarding her alleged mishandling of the business. She said she realized at that time that she had forgotten to assert her claim for reimbursement to which she was entitled because funds belonging to her for BP rents had been put into the business account. There is no dispute that trailers owned separately by Ana were included in the rental agreement with BP. The trial court heard testimony from Ana that the rental income paid by BP for her separately-owned trailers amounted to $88,115.25. The court obviously believed [ 1sAna’s testimony on this issue, and found that the money from BP was her separate property.
An estate consists of the property, rights, and obligations that a person leaves *434 after his death. La. C.C. art. 872 The legal import of the trial court’s factual finding is that this BP money was not a part of the decedent’s estate at the time of his death but was the separate property of his spouse. Accordingly, we affirm the trial court’s ruling that the BP rental income claimed by Ana is her separate property, but we amend the judgment to reflect that the correct amount to be awarded for this reimbursement claim is $88,115.25.
In the next assignment of error, Chuck and Tammy argue that the trial court erred in denying their claim for reimbursement from the succession for attorney’s fees and expert witness costs incurred by them while acting in their capacity as succession representatives. Specifically, in denying this claim, the trial court stated that each heir is to bear the costs of his or her own attorney, and that the only attorney’s fees to be paid from the succession assets are those due to Mr. Paul Tabary for his representation of all heirs in connection with services rendered for the benefit of the succession.
Chuck and Tammy argue that they retained attorneys and an accountant to advise them concerning their duties as co-executors of the succession, and to defend the succession against what they describe as adverse claims brought by Ana. Their position is that the actions they have taken to recover amounts from Ana and to defeat her claims for reimbursement, if successful, would benefit the succession as a whole. We agree, and find that they are entitled to reimbursement from the succession for attorney’s fees and costs incurred by them in their roles as succession representatives.
119La. C.C.P. art. 3191A states:
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.
“It has long been recognized in Louisiana law that an executor of a succession may obtain an attorney to aid in the carrying out of the executor’s duties and to defend the succession against adverse claims made against it.” In re Succession of Brazan, 2007-566, p. 8 (La.App. 5 Cir. 12/27/07), 975 So.2d 53, 57, citing Succession of Jenkins, 481 So.2d 607 (La. 1986). This Court has held that fees for legal representation may be charged to the succession where such representation is for the benefit of the estate rather than for the personal benefit of the executor. Succession of Haydel, 606 So.2d 42, 45 (La. App. 4th Cir. 1992).
Because the record shows that the matters for which Chuck and Tammy sought legal representation and the advice of an accountant were for the benefit of the estate and were not frivolous, we reverse the portion of the trial court judgment denying Chuck and Tammy’s claim for reimbursement by the succession for attorney’s fees and expert witness costs. We remand this matter to the trial court for a determination of the amounts to be awarded to them for these fees and costs.
The remaining assignments of error involve Chuck and Tammy’s claim that Ana should be removed as succession representative and operator of the family business based on their allegations that she breached her fiduciary duties while acting in these capacities. They argue that Ana failed to provide a proper accounting to the succession and owes the succession reimbursement for business expenditures, personal expenses that she paid from busi *435 ness funds and rents she | ^received on her separately-owned trailers while trailers owned by the business remained vacant. This latter claim is based on the argument by Chuck and Tammy that Ana violated her duty to not place her personal interest ahead of the succession’s interest. Similarly, they argue that Ana usurped a business opportunity that belonged to the business when she purchased for her personal benefit several trailers that became available, rather than offering the succession the opportunity to purchase these trailers for the family business.
While the .trial court only specified that he was denying Chuck and Tammy’s request to remove Ana as operator of the family business, her roles as succession representative and business operator are intertwined, and we find the trial court also implicitly denied the request to remove Ana as a succession representative. He also ordered Ana to cease using business property to rent out her separately-owned trailers, and ordered that business employees and equipment cannot be used for Ana for her personal and/or separate endeavors. The court further ordered that Ana is to start paying all of her household-related expenses out of her own funds, unless authorized by the court to pay certain expenses through the business account. The court ordered that Ana is entitled to claim reimbursement for any portion of such expenses directly attributable to the family business, and to use acceptable accounting practices in making such claims. The court found insufficient evidence to support Chuck and Tammy’s claims that Ana committed theft of estate and/or business assets.
In reasons for judgment, the trial court found that Ana did breach some fiduciary duties owed to the estate in her operation of the family business after the decedent’s death. However, the court noted Ana’s explanation that she was not aware of the scope of her fiduciary duties, and was simply attempting the run the |2ibusiness in the same way as she and the decedent had in the past. The court stated that while these business, practices may have worked in the past when the decedent was alive and in agreement with Ana as to how to run the business, some business practices employed prior to the decedent’s death are not acceptable now that the business is being operated through the succession and the current relationship among the heirs is so contentious. The court stated that he was ordering certain assets returned to the estate after recognizing errors' made by Ama.
The record shows that Ana and the decedent operated the trailer park together for many years prior to the decedent’s death. During those years, Ana was never paid a salary. Her arrangement with the decedent was that the business paid many of her personal expenses in lieu of other compensation. When the decedent died, Ana continued to operate the business under the same practices even though the decedent’s other heirs inherited a portion of the business upon his death. Ana should not have done so without the consent of the other heirs, who now co-own the business with her.
Chuck and Tammy correctly point out that the only amount the trial court ordered Ana to reimburse to the succession was a $5,000.00 bonus payment made to an employee.[7] Nonetheless, we find the trial *436 court did not err in denying Chuck and Tammy’s request to remove Ana as the operator of the business or as a succession representative.
122A review of the record supports the trial court’s finding that Ana breached some fiduciary duties owed to the estate in her operation of the family business after the decedent’s death, including paying her personal expenses from the business account and essentially competing with the business by renting her separately-owned trailers instead of trailers owned by the business. Ana’s argument that she did not discuss these matters with Chuck and Tammy because of their strained relationship is not a valid one.
However, we find the evidence shows that Ana’s breaches were the result of her incorrect assumption that she could use the same business practices that had been in place before the decedent’s death. While Ana should not have continued to pay her personal expenses from business funds after the decedent’s death, we note that she was not receiving a salary at that time for her job as operator of the family business. The record shows that Ana now receives a salary. Additionally, as noted by the trial court, the testimony presented at trial established that Ana has done a good job running the business, and that it is in a much better financial state than it was at the time of the decedent’s death.
The record shows that Ana has provided a monthly accounting for expenses paid from business funds since being ordered to do so by the trial court judgment dated March 13, 2012. While Chuck and Tammy’s expert accountant found that these accountings were inadequate, the trial court apparently found otherwise. Furthermore, the trial court heard detailed testimony of expenses paid from business funds from the accountant who has handled the family business for many years.
“It is well settled that even when actual mismanagement is shown the trial court is not required to remove the executor, but retains the discretion to make ^whatever decision it feels is appropriate under the facts of the particular case.” In re Succession of McIntire, 2000-1275, p. 13 (La.App. 4 Cir. 4/25/01), 785 So.2d 1032, 1039, citing Succession of Houssiere, 247 La. 764, 174 So.2d 521 (1965); Succession of Krushevski, 528 So.2d 743 (La.App. 4th Cir.1988). By ruling as he did in denying the request to remove Ana as succession representative and operator of the business, the trial court apparently found that Ana’s breaches of her fiduciary duties did not rise to the level of requiring her removal, and that Chuck and Tammy did not prove that the succession suffered damages as a result of Ana’s breaches. We find no abuse of the trial court’s discretion in not removing Ana as succession representative and/or as operator of the family business. We also find no abuse of the court’s discretion in not assessing Ana with damages for the breaches of her fiduciary duty, or in not ordering Ana to reimburse the succession for additional amounts not listed in the judgment.[8]
For the reasons stated above, the exception of prescription filed by Chuck and Tammy as to Ana’s claim for reimbursement of BP rental income is overruled. We *437 reverse the portion of the trial court | ^judgment ruling that Chuck, Tammy and Tanya shall each have a separate 1/6 vote as succession representatives, and render judgment holding that Chuck, Tammy and Tanya “together” shall have one-half (1/2) of the votes as succession representatives. We affirm the trial court’s ruling that the BP rental income claimed by Ana is her separate property, but we amend the judgment to reflect that the correct amount to be awarded for this reimbursement claim is $88,115.25. We reverse the portion of the trial court judgment denying Chuck and Tammy’s claim for reimbursement of attorney’s fees and expert witness costs, and remand this matter to the trial court for a determination of the amounts to be awarded to them for these fees and costs. In all other respects, the judgment of the trial court is affirmed.
APPEAL CONVERTED TO WRIT; AFFIRMED IN PART; AMENDED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART; EXCEPTION OF PRESCRIPTION OVERRULED

. For the remainder of this opinion, we will refer to the late Charles B. Fanz, Jr., as the decedent. We will refer to the decedent’s widow and children by their first names.

. The trial court stated that this issue was previously determined by his predecessor. At a hearing on March 2, 2012, the trial court’s predecessor had made statements indicating that he interpreted the voting rights provision regarding succession representative as giving Chuck, Tammy and Tanya each a 1/6 vote. However, in the judgment rendered on March 13, 2012 following the March 2, 2012 hearing, the trial court did not specifically include a determination as to the will’s voting rights provision regarding succession representatives. The October 1, 2015 judgment is the first judgment in the record that specifically addresses this issue.

. The detailed descriptive list in the record references the properties by addresses, not lot numbers.

. See Griffin v. Daigle, 1999-1942, p. 13 (La.App. 1 Cir. 9/22/00), 769 So.2d 720, 728.

. This brief, filed on behalf of the Estate of Charles B. Fanz, Jr., supports the positions advocated by Ana and Tanya.

. There is a suspensive condition in the will that allows for Mildred Fanz to become a succession representative upon her attaining the age of majority in the event Ana is unwilling to serve. In this instance, all four children would share an equal vote.

. In the judgment, the trial court ordered Ana to reimburse the succession for a $5,000.00 payment she gave to an employee as a bonus. The trial court found that this amount may or may not have been authorized by the decedent before his death, and Ana should not have made the decision to honor the dece *436 dent’s alleged wishes without obtaining the consent of the other co-executors.

. It is apparent to this Court that the trial court seeks to correct the errors made in the past by implementing new rules going forward, including ordering Ana to refrain from using business funds or assets for her personal use and to use accepted accounting practices in her claims for reimbursement for expenses she incurs that are attributable to the business.