SUCCESSION OF CHARLES B. FANZ, JR.

* NO. 2019-CA-0503

*

**COURT OF APPEAL**

*

**FOURTH CIRCUIT**

*

**STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 118-442, DIVISION "DIVISION D"
Honorable Darren M. Roy, Judge

* * * * * *

**Judge Dale N. Atkins**

* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)


William D. Treeby
Maggie A. Broussard
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112


      COUNSEL FOR APPELLANTS


Paul A. Tabary, III
Elizabeth R. Borne
TABARY AND BORNE, LLC
Three Courthouse Square
Chalmette, LA 70043

Patrick S. McGoey
Kyle Schonekas
Andrea V. Timpa
SCHONEKAS, EVANS, McGOEY & McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, LA 70112


COUNSEL FOR APPELLEES


**AFFIRMED**
**JANUARY 29, 2020**

This is a succession dispute between a widow, Ana Fanz ("Mrs. Fanz"), and her deceased husband's three adult children. Charles B. Fanz, Jr.'s (the "decedent") two adult children, Charles B. Fanz, III, ("Chuck") and Tammy Fanz ("Tammy") appeal two judgments rendered by the trial court on December 27, 2018. Mrs. Fanz and Tanya Fanz ("Tanya"), the decedent's other adult child, also appeal one of the trial court's December 27, 2018 judgments.

For the reasons that follow, we affirm.

## BACKGROUND

This is the second time this matter is before this Court. As such, this Court adopts the factual background as stated in *Succession of Charles B. Fanz, Jr.*, 2016-0180 (La App. 4 Cir. 12/16/16), 208 So.3d 422. In *Succession of Charles B. Fanz, Jr.*, Chuck and Tammy appealed the trial court's October 1, 2015 judgment, which addressed several disputed issues between the parties regarding the succession. Relevant to the instant appeal, in *Succession of Charles B. Fanz Jr.*, this Court affirmed the trial court's ruling, which ordered Mrs. Fanz to cease using the equipment and employees of the succession's sole asset, Fanz Mobile Home Estates ("FMHE"), for her personal laundry and propane businesses. This Court

also held that the trial court did not abuse its discretion in denying the motion to remove Mrs. Fanz as the operator of the family business. Thereafter, Chuck and Tammy filed an application for *writ of certiorari* to the Louisiana Supreme Court, which was denied on March 24, 2017.

On August 14, 2017, Mrs. Fanz and Tanya filed a petition requesting that the Trust be "placed into possession of the [FMHE] business, [along with] all banking accounts associated with the business, and all of the business' [sic] assets." On September 1, 2017, Chuck and Tammy filed an *Ex Parte* Motion to Reset Petition For Contempt of Court re-urging claims alleged in their original petition that Mrs. Fanz continued operating her "wash and fold" laundry and "self-serve" laundry business on FMHE's property in violation of the trial court's October 1, 2015 judgment.[1] Chuck and Tammy also filed a "Motion to Remove Ana Fanz As Business Manager and Resolve the Matters for which the Co-Executors are Deadlocked," as well as an opposition to Mrs. Fanz's and Tanya's Petition to Place the Charles B. Fanz Trust Into Possession and/or Partial Possession.

On January 30, 2018, Chuck and Tammy filed a "Motion to Traverse Detailed Descriptive List" asserting that the detailed descriptive list (the "DDL") should be amended based upon the discovery of a donation *inter vivos* ("Donation") executed by the decedent in 2005. Chuck and Tammy contended that the current DDL contains property the decedent no longer owned, as the 2005 Donation conferred ownership of certain succession property to Charles Fanz, LLC, including the marital property. On the same day, Chuck and Tammy filed a

---

[1] The trial court set the matter for a rule to show cause hearing. However, the record does not reflect the trial court ruled on this petition. Presumably, however, the trial court did not rule on this matter as Chuck and Tammy petitioned the court to reset the Petition for Contempt of Court.

"Supplemental Opposition to Petition to Place Trust into Possession or Partial Possession," and a "Supplemental Motion to Remove Ana Fanz as Business Manager, Remove Ana Fanz Executor, and Alternative Motion to Resolve Issues in which the Co-Executors are Deadlocked." Certain matters were set for a Rule to Show Cause Hearing on March 21, 2018.[2]

Prior to the March 21, 2018 scheduled hearing, Mrs. Fanz filed a "Petition for Declaratory Judgment Annulling Donation *Inter Vivos* and Ordering Cancellation of Inscription." Mrs. Fanz and Tanya asserted that the decedent executed the Donation to "shield his assets from potential liability" as a result of an automobile accident, and never intended to transfer ownership of the marital property to Charles Fanz, LLC. Thus, they alleged that the Donation should be annulled because it is a simulation. The same day, Mrs. Fanz filed a Notice of *Lis Pendens*, requesting a judicial declaration of nullity of the Donation and cancellation of the inscription. She claimed that Chuck and Tammy improperly recorded the Donation in St. Bernard Parish's conveyance records.

Mrs. Fanz also filed a Motion for Temporary, Preliminary, and Permanent Injunction, Motion to Remove Charles B. Fanz, III, as Executor, and Alternatively a Mental Health Evaluation arguing that Chuck had harassed, stalked, and threatened both she and Tanya to the extent that they feared for their safety. On May 17, 2018, Chuck filed an opposition, alleging that Mrs. Fanz's accusations were "grossly misrepresented" and the accusations alleged by Tanya were several

---

[2] The following motions and petition were heard:

    (1) Amended, Restated, and Supplemental Motion to Remove Ana Fanz as Business Manager, Remove Ana Fanz as Executor; and

    (2) Alternative Motion to Resolve Matters for Which the Co-Executors are Deadlocked.

years old. Thereafter, Chuck and Tammy filed a Motion to Disqualify Ana Fanz as Trustee.

All of these matters were tried on June 21, 2018; June 22, 2018; July 10, 2018; July 16, 2018; and August 7, 2018. The trial court allowed the parties to file post-trial briefs, and took the matter under advisement. On December 27, 2018, the trial court rendered judgment as follows:

> (1) Granting the Motion to Place the Trust into Possession or Partial Possession;
>
> (2) Denying the following motions:
>
>> a. Motion to Remove Charles B. Fanz III as executor filed by Mrs. Fanz;
>>
>> b. Motion to Remove Ana Fanz as Business Manager filed by Chuck and Tammy;
>>
>> c. Motion to Disqualify Ana Fanz as Trustee filed by Chuck and Tammy; and
>>
>> d. Motion to Hold Ana Fanz in Contempt of Court filed by Chuck and Tammy.
>
> (3) Denying, as moot, the Motion to Traverse Detailed Descriptive List filed by Chuck and Tammy; and
>
> (4) Denying, as moot, the Motion to Resolve Matters for which the Co-Executors are deadlocked filed by Chuck and Tammy.

The trial court also granted Mrs. Fanz's and Tanya's Petition for Declaratory Judgment, and annulled the Donation, ordering the inscription be cancelled. It is from these two judgments that the parties appeal.

4

**STANDARD OF REVIEW**

"In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *White v. Cox Operating, LLC*, 2016-0901, p. 4 (La. App. 4 Cir. 4/5/17), 229 So.3d 534, 538 (quoting *Hall v. Folger Coffee Co.*, 2003-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98). "Thus, a reviewing court may not merely decide if it would have found the facts of the case differently." *Id.*

"In order to reverse findings of the factfinder, 'an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong.'" *Id.* (quoting *Harold A. Asher, CPA, LLC v. Haik*, 2012-0771, p. 4 (La. App. 4 Cir. 4/10/13), 116 So.3d 720, 723-24). "[A]n appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong." *Harold A. Asher, CPA, LLC*, 2012-0771, p. 4, 116 So.3d at 723 (quoting *Sassone v. Doe*, 2011-1821, p. 3 (La. App. 4 Cir. 5/23/21), 96 So.3d at 1245).

"The manifest error standard of review also applies to 'mixed questions of law and fact.'" *White*, 2016-0901, p. 5, 229 So.3d at 538 (quoting *Serou v. Touro Infirmary*, 2012-0089, p. 18 (La. App. 4 Cir. 1/9/13), 105 So.3d 1068, 1083). "Conversely, appellate courts review questions of law using the *de novo* standard." *Id.* (quoting *Harold A. Asher, CPA, LLC*, 2012-0771, p. 5, 116 So.3d at 724).

5

**DISCUSSION AND ANALYSIS**

On appeal, Chuck and Tammy raise five assignments of error, while Mrs. Fanz and Tanya raise one assignment of error. We address the issues raised in the following order: (1) whether the trial court erred in ruling the Donation *inter vivos* was a simulation and cancelling its inscription; (2) whether the trial court erred in placing the Trust into possession of assets of the succession; (3) whether the trial court abused its discretion in not disqualifying Mrs. Fanz from serving as executrix, trustee, and business manager for FMHE, and in not disqualifying Chuck as executor of the succession; (4) whether the trial court erred in denying Chuck and Tammy's motion for contempt of court; and (5) whether the trial court erred in failing to resolve issues on which the executors remain deadlocked.

*Donation Inter Vivos*

The record reflects that in 2017, the parties discovered a 2005 Act of Donation *Inter Vivos*, wherein the decedent transferred his immovable property to the newly-created Charles Fanz, LLC, of which the decedent was the sole member. Thereafter, the record reflects that Mr. James Roan ("Mr. Roan"), the decedent's long-time attorney and the notary who executed the Donation, had a handwritten note with instructions from the decedent to "take no action" on the Donation until the decedent told him to do so. Though the Donation was never recorded until its discovery in 2017, there is no dispute that it was executed in proper form. For that reason, in their first assignment of error, Chuck and Tammy argue that the trial court erred in ruling that the 2005 Act of Donation *Inter Vivos* was a relative simulation conditioned on the will of the donor and cancelling its inscription because the Donation was complete at the time of its execution and acceptance by the donee, notwithstanding its lack of recordation. Chuck and Tammy contend that

6

the Donation shows that the decedent no longer had ownership interest in the marital property he bequeathed to Mrs. Fanz at the time of his death as it had been donated to the LLC. Thus, the decedent could not properly bequeath the marital property to Mrs. Fanz, and the DDL filed in this matter, listing the immovable property as an asset of the succession, is incorrect.

Mrs. Fanz and Tanya counter—and the trial court agreed—that the note instructing Mr. Roan to "take no action" on the Donation shows that the Donation was a simulation, never intended to have any effect. The note, dated December 27, 2005, stated: "Per conversation with Mr. Krass and Mr. Fantz (sic), no action will be taken until I hear from either of them." Mr. Roan testified that the decedent told him to take no further action on the Donation until instructed, that he never received any other instructions on the Donation from the decedent, and that he subsequently forgot about the Donation. Mrs. Fanz and Tanya also point to the fact that, after the Donation, the decedent informed no one about the Donation, continued to hold himself out as owner of the property, and mortgaged the property in his own name, to prove that the decedent did not intend to transfer ownership of the property.

"A donation *inter vivos* is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." La. C.C. art. 1468. "A donation *inter vivos* may be revoked…for the nonfulfillment of a suspensive condition or the occurrence of a resolutory condition." La. C.C. art. 1556. When the condition placed on the donation depends solely on the will of the donor, the donation is null. La. C.C. art. 1530.

7

Notwithstanding any other form requirements for a valid donation *inter vivos*, "the substantive requirements of divestment and donative intent must be established." *Succession of Dauterive*, 2018-0131, p. 5 (La. App. 4 Cir. 7/18/18), 251 So.3d 1204, 1208, *writ denied*, 2018-1382 (La. 11/14/18), 256 So.3d 293 (citing *Succession of Woolfolk*, 225 La. 1, 71 So.2d 861, 864 (1954)). "The burden of proving the donation is on the donee and…the proof to support the donation must be strong and convincing." *Woolfolk*, 71 So.2d at 864. The trial court's determination here that there was no donative intent and the parties did not intend to transfer the property is a factual issue, reviewed under the manifest error standard. *Id*., 2018-0131, p. 4, 251 So.3d at 1207 (quoting *Succession of Serio*, 597 So.2d 91, 93 (La. App. 4 Cir. 1992)).When the trial court holds that there was no donative intent and that both transferee and transferor only pretended to transfer the property from one to the other while actually intending the transferor to retain ownership of the property, the act is said to be a simulation and an absolute nullity. *Owen v. Owen*, 336 So.2d 782, 786 (La. 1976). *See also Successions of Webre*, 247 La. 461, 172 So.2d 285 (La. 1965); *Schalaida v. Gonzales*, 174 La. 907, 142 So.123 (La. 1932).

We find that the trial court did not commit manifest error in its factual determination of lack of donative intent. In its reasons for judgment,[3] the trial court made the following findings of fact regarding intent of the donor (the decedent) and the donee (the LLC): (1) that the handwritten note instructing Mr. Roan to take

---

[3] It is a "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671. However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id*., 2009-0571, p. 78, 61 So.3d 572; *See also Double NRJ Trucking, Inc. v. Johnson*, 2017-667, p. 7 (La. App. 5 Cir. 5/16/18), 247 So.3d 1125, 1131.

no action on the Donation was credible; (2) that the decedent exhibited conduct for the remainder of his life after the Donation that indicated he considered the property his own, including keeping it as a bequest to Mrs. Fanz in his will, mortgaging it, leasing it, and paying the taxes for it; (3) that he told no one about the Donation, and no one knew of its existence until the act's discovery in 2017; (4) that, because the decedent was the sole member of the LLC, the LLC had no will separate from the decedent's, meaning the donee also lacked donative intent; and (5) that the true intent of the parties was for the Donation to take effect should the decedent find it necessary at some later point.

We find no manifest error in these factual determinations. The record supports the trial court's conclusion that there was no donative intent on the part of either the donor or the donee, and the burden of showing donative intent by strong and convincing proof has not been met. Indeed, the only proof of donative intent is the act itself, which Mr. Fanz instructed be put in a drawer until later and for no further action to be taken on the act, per the note from Mr. Roan. Mr. Roan, the attorney and notary, who was one of the few parties who knew of the Donation, testified that he never received further instructions from the decedent on the act, and subsequently forgot about it. The record also reflects that the decedent also continued to hold himself out to everyone—including his wife and children—as the owner of the property, by personally paying the property taxes, leasing, and mortgaging it. The record supports the trial court's factual finding that the decedent lacked donative intent. The decedent executed the Donation to have his assets transferred to the LLC if such action was desired in the future. The fact that the decedent was the only member of the LLC also supports the trial court's factual determination that the decedent's intent was the same as the intent of the LLC, as

9

no other intent is able to be formed. There was no manifest error in the trial court's finding that the parties to the Donation lacked donative intent, and that the Donation was a simulation and invalid.

### *Placing the Trustees in Possession of the Business*

Next, we address whether the trial court erred in placing the legatees in possession of a succession asset, namely the business, FMHE.

La. C.C.P. art. 3372 provides, in pertinent part, "[a]t any time prior to the homologation of the final tableau of distribution, the legatees in a testate succession may be sent into possession of all or part of their respective legacies upon filing a petition for possession…". A trial court "shall render and sign immediately a judgment of possession, if it finds from an examination of the petition for possession, and from the record of the proceeding, that the petitioners are entitled to the relief prayed for." La. C.C.P. art. 3061(A). Further, "[a] judgment of possession shall be rendered and signed as provided in Article 3061. The judgment shall be rendered and signed only after a hearing contradictory [sic] with the succession representative, unless he joins in the petition, in which event the judgment shall be rendered and signed immediately." La. C.C.P. art. 3381. However, "[b]efore the succession can be closed and the independent administrator discharged, there must be filed an inventory or sworn detailed descriptive list of assets and liabilities of the estate verified by the independent administrator." La. C.C.P. art. 3396.18.

Chuck and Tammy argue that Mrs. Fanz's and Tanya's request for judgment of possession was premature, and that the trial court erred in accepting that the required procedural steps were met prior to placing the legatees in possession of FMHE. Further, they assert the DDL was incorrect and incomplete. Chuck and

10

Tammy also assert that Mrs. Fanz and Tanya recognized that the DDL was incomplete, and voted to amend it, but the DDL was never amended.

Conversely, Mrs. Fanz and Tanya argue the legal and procedural requirements were met to place the legatees in possession of FMHE. They argue that, contrary to Chuck and Tammy's argument, it is was procedurally required for the DDL to be filed prior to placing the legatees in possession of FMHE and its assets. Specifically, Mrs. Fanz and Tanya contend that the former version of La. C.C.P. art. 3396.18, on which Chuck and Tammy's argument relies, required there be a filing of an inventory list or descriptive list prior to placing a legatee in partial or final possession of succession property. However, La. C.C.P. art. 3396.18 was amended and now only requires the filing of an inventory list or descriptive list prior to the closing of a succession or discharging an independent administrator.

Further, Mrs. Fanz and Tanya assert that Chuck's and Tammy's argument asserting the DDL is incomplete and incorrect is unfounded. They assert the asset subject to the judgment of partial possession was limited to FMHE and its assets. Mrs. Fanz and Tanya argue the marital property was a particular legacy to Mrs. Fanz, and, therefore, was not included in the judgment of partial possession. We agree.

A review of the record supports the trial court's judgment. Louisiana statutory law establishes that the trial court has the authority to place legatees in possession of succession property upon the filing of petition for possession; after a contradictory hearing; and a judgment of possession is signed. The record reveals Mrs. Fanz and Tanya filed a petition for partial possession, and a contradictory was held in which the trial court had the opportunity to review Mrs. Fanz's and Tanya's petition, hear testimony, and review the evidence submitted by the parties. The trial

11

court rendered its judgment to place the legatees in possession of FMHE and its assets.

In its reasons for judgment, the trial court found that the decedent's will established the Trust was designed to operate FMHE, which the trial court noted was at a "managerial impasse." The trial court found the executors unable to make amicable decisions concerning the business. Accordingly, the trial court determined it was in the best interest of the parties to place the legatees in possession of the business and its assets in accordance with "Mr. Fanz's will" so that management and business decisions can be made pursuant to the decedent's bequests.

Moreover, Mrs. Fanz and Tanya are correct in their assertion that the DDL is not required to be filed prior to placing a legatee in final or partial possession of succession property. La. C.C.P. art. 3396.18 was revised by the Louisiana legislature in 2017. Presently, La. C.C.P. art. 3396.18 provides that an inventory or sworn list of assets and liabilities must be filed prior to the closing of a succession or discharging of an independent administrator. The filing of the DDL was not a legal or procedural requirement to place a successor in possession of succession property, even though Mrs. Fanz and Tanya filed the DDL. As such, Chuck's and Tammy's argument that the trial court erred in rendering a judgment of possession because the DDL is incomplete and incorrect lacks merit.

Therefore, we find the trial court did not err in granting the judgment to place the legatees in partial possession of FMHE.

***Removal of Mrs. Fanz as a Co-Executor and Business Manager and Removal of Chuck as Co-Executor***

Next, Chuck and Tammy argue the trial court abused its discretion in denying their motion to remove and disqualify Mrs. Fanz as succession executor, trustee, and business manager of FMHE. Similarly, Mrs. Fanz and Tanya argue the trial court abused its discretion in denying their motion to remove Chuck as executor of the succession.

Chuck and Tammy primarily assert that Mrs. Fanz breached her fiduciary duties as it pertains to the management of FMHE, which is the sole asset of the succession. Chuck and Tammy presented an expert witness, Holly Sharp ("Ms. Sharp"), a certified public accountant and certified fraud examiner, who testified that Mrs. Fanz did not keep adequate business records. Chuck and Tammy argue Ms. Sharp's testimony supports their mismanagement claim. Further, they assert that Mrs. Fanz should be removed as a succession representative because of her bad moral character, contending that she committed fraud by filing false income tax returns and failing to report her income from the personal rental properties she attained while managing FMHE. Meanwhile, Mrs. Fanz and Tanya assert that Chuck should be removed as a succession representative because he breached his fiduciary duties and is unfit to be an executor due to his hostile behavior towards them.

"A party seeking removal of a succession representative must prove by convincing evidence that the representative breached her fiduciary duty to the succession under LSA–C.C.P. art. 3191 or the existence of one of the grounds for removal enumerated in LSA–C.C.P. art. 3182." *In re Succession of Brazan*, 2007-566, p. 6 (La. App. 5 Cir. 12/27/07), 975 So.2d 53, 56. "Those grounds include

disqualification, incapability of discharging the duties of office, mismanagement of the estate or failure to perform any duty imposed by law or court order. LSA–C.C.P. art. 3182." *Id.*

Further, the trial court only has the power to remove a succession representative once "there is convincing evidence of an act or acts of mismanagement." *Succession of Houssiere*, 247 La. 764, 773, 174 So.2d 521, 525 (1965). "Thereafter, the trial court is not required to remove the representative, but is vested with discretion to determine whether removal is appropriate under the facts of the particular case." *In re Succession of Brazan,* 2007-566, p. 6, 975 So.2d at 56 (citing *Succession of Krushevski*, 528 So.2d 743 (La. App. 4th Cir. 1988)). "Absent an abuse of discretion, the trial court's decision regarding removal of the representative will not be disturbed on appeal." *Id.* (citing *In re Succession of LaFleur*, 1999-1100, (La. App. 3 Cir. 12/8/99), 752 So.2d 237, *writ denied*, 2000-0446 (La. 3/31/00), 759 So.2d 74).

Regarding the motion to remove Mrs. Fanz as business manager of FMHE, succession executor, and trustee, the trial court noted the evidence presented at trial revealed Mrs. Fanz could have done a better job at running the business, being more transparent as to business matters, and complying with accounting standards. However, the trial court determined there was no "conclusive" evidence that demonstrated Mrs. Fanz breached her fidcuiary duties or stole money from the business. The trial court also noted many of Chuck's and Tammy's complaints regarding Mrs. Fanz's management of the business were "day-to-day business matters" that the trial court could not address. Relying on its findings of fact, the trial court determined that FMHE is a sustainable business and Mrs. Fanz did not

14

breach her fiduciary duties as the business manager of FMHE or executor and trustee of the succession. We agree.

The record demonstrates that FMHE continues to be a profitable business. Ms. Sharp, Chuck's and Tammy's expert witness, raised concerns regarding Mrs. Fanz's financial management of FMHE, opining there were "fraud and mismanagement" indicators. However, Ms. Sharp admitted that she could not recall one incident that revealed Mrs. Fanz stole money from FMHE. However, Mrs. Fanz's and Tanya's expert witness, Benjamin Vance ("Mr. Vance"), a certified public accountant, testified that FMHE's revenues are "consistent with industry and economic trends," and provided that its profitability is comparable or greater than industry standards. Mr. Vance also testified that Mrs. Fanz did not unreasonably keep the "books and records" of FMHE. Moreover, the record reveals that neither Chuck nor Tammy asked for an audit of FMHE's business records to support their mismanagement claim. As such, the record does not reveal that conclusive evidence was presented demonstrating mismanagement of FMHE by Mrs. Fanz.

As it relates to Mrs. Fanz's and Tanya's motion to remove Chuck as executor, the trial court found that there was no evidence presented at the trial that showed Chuck violated his fiduciary duties as an executor. While the trial court found that the relationship between the parties was acrimonious, it similarly found there was no evidence presented at trial to illustrate Chuck behaved so badly to remove him as executor of the succession.

We also agree with the trial court's findings regarding removing Chuck as executor. The record reveals that Chuck, Mrs. Fanz, and Tanya had some unpleasant interactions in the past. However, there is no evidence that reveals

15

Chuck breached his fiduciary duties or behaved so egregiously as to remove him as an executor of this succession. Thus, we find that the trial court did not abuse its discretion in denying both parties' motions for removal of executors.

***Motion for Contempt***

Next, Chuck and Tammy argue the trial court erred in failing to hold Mrs. Fanz in contempt of court. They argue that Mrs. Fanz failed to comply with the trial court's October 1, 2015 judgment, which ordered her to cease using FMHE's equipment for her personal business.

"When deciding whether to hold someone in contempt, the trial court is vested with great discretion." *Jaligam v. Pochampally*, 2014-0724, p. 5 (La. App. 4 Cir. 2/11/15), 162 So.3d 464, 467 (quoting *Kirschman v. Kirschman*, 2012-0385, p. 2 (La. App. 4 Cir. 12/28/12), 109 So.3d 29, 31). "The burden of proof in a civil contempt proceeding is by a preponderance of the evidence and appellate review is the manifestly erroneous standard." *Id.* (citing *Kirschman*, 2012-0385, p. 2, 109 So.3d at 31).

Pursuant to La. C.C.P. art. 221, "[a] contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." Further, "[t]he trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion." *State through Department of Children and Family Services Child Support Enforcement v. James Knapp*, 2016-0979, pp. 13-14 (La. App. 4 Cir. 4/12/17), 216 So.3d 130, 140.

Chuck and Tammy argue that Mrs. Fanz continued to operate her laundry businesses on FMHE's property and used FMHE's utilities to do so without reimbursing the business, in violation of the trial court's October 1, 2015 judgment. They contend Mrs. Fanz's admitted at trial to operating the laundry businesses in violation of the trial court's October 1, 2015 judgment.

Mrs. Fanz and Tanya counter that Mrs. Fanz has complied with the trial court's October 1, 2015 judgment, and that Chuck and Tammy are incorrect in arguing that the trial court's judgment ordered Mrs. Fanz to cease all personal business on FMHE's property. Instead, Mrs. Fanz and Tanya contend the trial court's October 1, 2015 judgment only restricted the use of FMHE's business equipment and employees for Mrs. Fanz's personal business endeavors, and Mrs. Fanz has complied with that order.

In its reasons for judgment, the trial court noted its October 1, 2015 judgment ordered that "the use of business equipment by Ana Fanz for personal and/or separate endeavors is not permitted. Employees may not be used for such activities while they are being paid by the Fanz mobile home park business." The trial court further noted that its October 1, 2015 judgment was limited to "business equipment and employees." The trial court found that, based on the evidence presented at trial, Mrs. Fanz stopped operating or selling propane or "turned over" the propane and laundry business to FMHE. Further, the trial court found that, before Mrs. Fanz ceased operation of the businesses, she continued to operate the businesses in accordance with the majority votes of the executors of the "prior voting arrangement." Thus, the trial court ruled that Mrs. Fanz complied with its October 1, 2015 judgment and denied Chuck and Tammy's contempt motion. However, Chuck and Tammy adamantly argue that Mrs. Fanz continued to operate

17

her personal business, and did so upon an "invalid" vote in exchange for the use of her home office. This argument is without merit.

In November 2015, a meeting was conducted to establish Mrs. Fanz's salary as manager of FMHE and that Mrs. Fanz would operate her personally-owned laundry facilities on FMHE's property in exchange for not receiving reimbursement for FMHE's use of an office in Mrs. Fanz's home. Mrs. Fanz and Tanya were present at the meeting, while Chuck and Tammy did not attend the meeting. However, this agreement was approved by Mrs. Fanz and Tanya, who represented the majority vote under the voting arrangement in place at the time of the meeting.[4] The record is void of evidence showing that the decisions made at this meeting are not still valid. However, the record supports the trial court's conclusion that Mrs. Fanz had ceased operating the laundry businesses personally.

Moreover, Mrs. Fanz testified the laundry facilities are essential amenities to FMHE, given the demographic the business serves. Thus, she explained, as the manager of FMHE, she decided to keep the laundry facilities open in consideration of the residents serviced by the business. Mrs. Fanz explained that she was faced with deciding whether to shut down operation of the laundry businesses, but opted to keep them open to avoid negatively impacting FMHE. Thus, to ensure she was in compliance with the trial court's October 1, 2015 judgment, Mrs. Fanz provided an "in kind exchange" with FMHE. However, the record demonstrates that Mrs. Fanz divested operations of her "self-service" laundry and "wash and fold" businesses to FMHE.

---

[4] Notably, after the occurrence of this meeting, this Court reversed the trial court's ruling as to the voting procedure. In *Succession of Charles B. Fanz, Jr.*, this Court ruled that Chuck, Tammy, and Tanya will "together" have one-half (1/2) vote as representatives of the succession. 2016-0180, p. 24, 208 So.3d at 437.

Based on our review of the record, it is evident that Mrs. Fanz is not personally operating the laundry business or propane business, or using FMHE's business equipment and employees to personally operate these businesses. Further, as the trial court noted, the record reveals that Mrs. Fanz has surrendered the laundry and propane businesses to FMHE. Applying the manifest error standard of review, we do find the trial court's factual findings manifestly erroneous. Thus, we find Chuck's and Tammy's arguments contesting the trial court's denial of their contempt motion meritless.

### *Deadlocked Issues*

Finally, Chuck and Tammy argue the trial court erred in failing to rule on all issues raised on which the executors remain deadlocked. Chuck and Tammy argue the trial court completely failed to address three general issues raised by them. First, they argue the trial court failed to address whether the actions taken by Mrs. Fanz and Tanya pursuant to the voting scheme were legitimate. Second, they argue the trial court failed to address any of the issues upon which the executors were deadlocked, contending the trial court "avoided" addressing any conflicts existing between the executors because it placed the trustees in possession. Lastly, Chuck and Tammy argue the trial court failed to rule on its request to order Mrs. Fanz to submit an IRS Form 1099 for compensation she received prior to the trial court's October 1, 2015 judgment.

"It is well settled that when a trial court's judgment is silent with respect to a party's claim, or an issue placed before the court, it is presumed that the trial court denied the relief sought." *River Rental Realty LLC v. Deep South Leasing, LLC*, 2017-0982, p. 10 (La. App. 4 Cir. 6/20/18), 250 So.3d 372, 379 (quoting *Loria v. Petunia's Rest*, 2002-1712, p. 3 (La. App. 4 Cir. 7/9/03), 852 So.2d 510, 512).

19

A review of the trial court's judgment and reasons for judgment demonstrates that the trial court did not fail to address these issues raised by Chuck and Tammy. Rather, the trial court determined it best to place the business assets in the Trust in accordance with the decedent's will so the trustees may manage those assets with a "reasonable voting arrangement," as opposed to the executors being "paralyzed by deadlock." The trial court rendered, as moot, the Motion to Traverse Detailed Descriptive List, filed by Chuck and Tammy, and the issues Chuck and Tammy raised as matters which the co-executors remain deadlock. The fact that the trial court declined to specifically address these issues in its judgment leads to the presumption that the trial court denied the relief sought by Chuck and Tammy. Thus, we find this assignment of error lacks merit.

## DECREE

For the foregoing reasons, we affirm the trial court's judgments.

**AFFIRMED**