Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,353-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF JOHNYE MAE MADDEN

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 16191

Honorable Allen Parker Self, Jr., Judge

* * * * *

| | |
|---|---|
| WILLIAM ALAN PESNELL | Counsel for Appellant, Mary Elizabeth Madden Chumley |
| McMICHAEL, MEDLIN, D'ANNA By: William Deryl Medlin    Norman Irion Lafargue | Counsel for Appellee, Succession of Johnye Mae Madden |
| BRADLEY, MURCHISON, KELLY & SHEA By: Leland Gray Horton    Nathan M. Telep | Counsel for Appellee, Catherine Willis, Savannah Willis, and James D. Madden, Agent |

* * * * *

Before GARRETT, STONE, and STEPHENS, JJ.

**STEPHENS, J.**

Mary Elizabeth Madden Chumley, independent executrix in the Succession of Johnye Mae Madden, appeals a judgment by the Twenty-Sixth Judicial District, Parish of Webster, State of Louisiana. The trial court granted a motion to remove executrix filed by James Madden as agent and attorney-in-fact for his granddaughters, Catherine and Savannah Willis (collectively, the "Maddens"). For the following reasons, we affirm the trial court's judgment.

## FACTS

Johnye Mae Madden died on January 26, 2016, in Webster Parish, Louisiana. Johnye left a last will and testament dated September 10, 2002, which was probated upon her death in Webster Parish (the "Succession").[1] In that testament, Johnye named her daughter, Mary Elizabeth Madden Chumley ("Beth") as the independent executor. Beth was appointed and qualified by court order on March 11, 2016.

Johnye had two other children, James and Charles, by her first husband, James Grady Madden, who predeceased her. James had a daughter, Sarah Madden Willis, who also predeceased Johnye. Finally, through Sarah, Johnye had two great-granddaughters, Catherine and Savannah Willis.

Johnye's testament included two pertinent bequests:

> 3.1    I give to my granddaughter Sarah Margaret Madden Willis my home situated at 102 Willow Creek Road, Minden, Louisiana  71055, including all buildings and improvements and all appurtenances thereto and improvements used in connection therewith ["Johnye's house"], together with

---

[1] This 2002 testament revoked a previous testament by Johnye dated February 7, 2001.

whatever automobile I own on the date of my death; my current automobile is a 1997 Mercury Grand Marquis.

3.2    I give to my granddaughter Sarah Margaret Madden Willis a bequest of cash and/or property in the amount/value of $450,000.

Because Sarah predeceased Johnye, the legacies made to Sarah accrete to Catherine and Savannah pursuant to La. C.C. art. 1593.[2]

What began as a seemingly routine succession proceeding ultimately escalated into a war of paper and words—pleadings and hearings before the trial court and supervisory writ applications and appeals to the appellate courts. After the March 2016 petition to probate, a motion was filed in November 2016 seeking to compel Beth to file a detailed descriptive list. In that motion to compel, James Madden, Catherine and Savannah's grandfather (and Johnye's son), appeared as agent of the two women, and corresponding powers of attorney were attached to that initial motion. Notably, James does not appear in this matter in his individual capacity. As a result of the Maddens' motion, Beth filed a preliminary detailed descriptive list of properties on January 10, 2017, which reflected a cumulative value of Johnye's assets in the amount of $2,302,408.00. No debts were noted in that detailed descriptive list and only one piece of immovable property—Johnye's house. The other listed assets included 150 former shares of common stock of Madden Contracting Company, LLC

---

[2] If a legatee, joint or otherwise, is a child or sibling of the testator, or a descendant of a child or sibling of the testator, then to the extent that the legatee's interest in the legacy lapses, accretion takes place in favor of his descendants by roots who were in existence at the time of the decedent's death. The provisions of this Article shall not apply to a legacy that is declared invalid or is declared null for fraud, duress, or undue influence. La. C.C. art. 1593

(formerly known as Madden Contracting Company, Inc.), as well as miscellaneous furniture, furnishings, and other personal effects.

In March 2017, the Maddens filed their motion seeking the removal of Beth as executrix. That was the seminal filing leading to the trial court's judgment pertaining to this appeal wherein the Maddens characterized Beth's actions (or inactions) as mismanagement and breach of fiduciary duty. However, that motion, filed almost three years ago, was waylaid by the attorney disqualification litigation. In response to the Maddens' legal proceedings against the Succession, Beth hired attorney Jerald Harper to represent her, and she proceeded to seek disqualification of the Maddens' attorney, Vernon Richie, in September 2017, claiming a conflict of interest by Richie. The basis for this claim was Richie's involvement as Beth's counsel in her father's succession. Ultimately, Richie was disqualified. *Succession of Madden*, 52,007-CW (La. App. 2 Cir. 12/21/17), *writ denied*, 2018-0137 (La. 3/9/18), 237 So. 3d 1176. Later, in April 2018, the Maddens claimed Harper should be disqualified because he employed a paralegal who had previously worked for Richie—the Maddens maintained the paralegal worked closely with Richie and was privy to confidential information pertaining the Succession. Ultimately, after months of more litigation, Harper was disqualified from representing Beth. *Succession of Madden*, 52,420-CW (La. App. 2 Cir. 9/13/18), *writ denied*, 2018-1701 (La. 1/8/19), 259 So. 3d 1022.

In the midst of the attorney disqualification litigation, progress in the Succession was at an unnecessary standstill, except for the filing on September 20, 2017, of a personal proof of claim by Beth seeking reimbursement of $350,000, purportedly for the amount "[expended] for the

care, health and welfare" during Johnye's lifetime. According to later allegations by Beth, the claim would serve to consume all of the Succession's remaining assets, depleting the estate. Beth's claim against the Succession was contested by the Maddens, and Beth refused to put Catherine and Savannah in possession of their testamentary legacies—primarily, Johnye's former home. It was Beth's contention she could not put anyone in possession without determining all the assets and debts of the Succession and making a final finding of the Succession's solvency.

Finally, after the attorney disqualification proceedings were concluded, the trial court was able to proceed with the Maddens' removal motion, holding a hearing on the matter. The only witnesses called at the hearing on the motion were Harper, Kerby Woodard (the insurance agent insuring Johnye's house), and Deryl Medlin (the attorney for the Succession). The trial court issued its order on May 31, 2019. Notably, in its reasons for granting the motion, the trial court identified Beth's expenditure on legal fees in the amount of $196,115.64, which had been reflected on the accounting of Succession expenses filed pursuant to the trial court's order. The Maddens' motion was granted and Beth was removed as executrix of Johnye's succession. An independent executor was appointed to proceed in the Succession. This appeal by Beth ensued.

## DISCUSSION

On appeal Beth brings four assignments of error and argues:

1) The trial court erred in finding that the Maddens provided evidence that Beth did not act as a prudent administrator;

2) The trial court erred in failing to recognize that Beth had a responsibility as the succession administrator to defend herself and the estate against the claims and legal filings by the Maddens;

4

3) The trial court erred in failing to dismiss the claims on the motion to remove Beth; and

4) The trial court erred when it did not recognize Beth was attempting to discover and recover succession assets.

Louisiana C.C.P. art 3182 provides:

> The court may remove any succession representative who is or has become disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Article 3097(4), or has failed to give notice of his application for appointment when required under Article 3093.

> The court on its own motion may, and on motion of any interested party shall, order the succession representative sought to be removed to show cause why he should not be removed from office. The removal of a succession representative from office does not invalidate any of his official acts performed prior to his removal.

Louisiana C.C.P. art 3191(A) provides:

> A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.

Thus, a party seeking removal of a succession representative must prove by convincing evidence that the representative either breached his fiduciary duty to the succession under La. C.C.P. art. 3191 or the existence of one of the grounds for removal enumerated in La. C.C.P. art. 3182. *Succession of Dean*, 2017-0155 (La. App. 1 Cir. 3/29/18), 247 So. 3d 746, *writ denied*, 2018-00679 (La. 9/14/18), 252 So. 3d 479; *In re Succession of LeBouef*, 2013-0209 (La. App. 1 Cir. 9/9/14), 153 So. 3d 527; *In re Succession of Keyes*, 2013-1145 (La. App. 4 Cir. 1/22/14), 133 So. 3d 163.

5

A trial court is authorized to remove a representative only after such a showing is made. *Succession of LeBouef*, *supra* at 534. At that point, the trial court is vested with discretion in determining whether removal of a succession representative is appropriate under the particular facts. Absent an abuse of discretion, the trial court's decision regarding removal of a succession representative will not be disturbed on appeal. *Id.*

Here, the initial motion by the Maddens seeking the removal of Beth as executrix was filed in March 2017 (approximately one year after the probate of Johnye's will). The basis for the request to remove included allegations that Beth: violated her "duty" to file an inventory or sworn descriptive list of the succession property; used Johnye's house "to store corporeal movable effects bequeathed to Beth in Johnye's testament," *i.e.*, she was using the house for her "own personal benefit"; failed to insure Johnye's house; and, failed to put Catherine and Savannah in possession of their particular legacy—Johnye's house. The motion was subsequently supplemented, and the Maddens added allegations that Beth had violated her fiduciary duties to Catherine and Savannah in several respects. On appeal, the Maddens maintain Beth failed to perform her fiduciary duty as executor of the succession. The Maddens argue the evidence supported that allegation, submitting that evidence includes:

1) Beth's personal Proof of Claim for $350,000 for money expended in the care of Johnye;

2) Beth's significant and ongoing depletion of estate assets, including attorney fees;

3) Beth's refusal to put Catherine and Savannah in possession of the testamentary legacy for nearly four years after Johnye's death;

6

4) Beth's separate pursuit of claims against the Maddens individually;

5) Beth's continued lack of prudence and judgment in the administration of the Estate; and,

6) Beth's delays in timely and efficient administration of the succession.

Here, the trial court characterized the most serious issue regarding Beth's removal as her "alleged conflict of interest/mismanagement of the estate which would place her in direct conflict with her fiduciary duties and responsibility to all heirs, legatees, and creditors of the succession." Ultimately, in making that determination, the trial court considered the Succession record before it; the accounting Beth filed with the trial court, which included expenses and credits from the date of Johnye's death until March 2019; and, the hearing conducted in connection with the motion to remove, where two witnesses close to the succession testified: Harper and Medlin.

At the hearing on the Maddens' motion, Harper appeared initially in connection with Beth's request for a continuance. The continuance request was denied and the hearing commenced, with the parties agreeing Harper's testimony could be considered in connection with the removal action. Harper testified to the acrimony between Beth and James, *i.e.*, their "adversarial relationship." Harper also confirmed that no action was taken in advancing Johnye's succession while the other litigation was ongoing. He also described the difficulty in identifying Johnye's assets. Finally, Harper opined that his representation of Beth in the proceedings was in her personal capacity and not as executrix of the estate.

Woodard testified regarding the insurance coverage on Johnye's house. It was his position that the house has been covered since the date of Johnye's death. The trial court accepted that fact in its reasons for judgment.

Finally, the most extensive testimony came from Medlin, who not only was the Succession attorney, but was also the attorney who drafted Johnye's testament. Medlin noted the judgment of possession in Grady Madden's succession, dated September 1, 1988, was "ground zero" in Johnye's succession. As a result of that, Johnye, by virtue of her community property interest, had been put in possession of 300 shares of capital stock in Madden Contracting Company, LLC, explaining why that asset was listed in the preliminary detailed descriptive list he prepared in Johnye's succession. Thus, Medlin testified that the records from Grady's succession were critical for making a determination of whether Johnye had other assets or not. He noted that the accounting filed with the trial court was simply a record of expenses and credits in the Succession, and it was not a claim—noting specifically the attorney fees would not be charged to the Succession until the trial court had concluded whether they were personal or succession related.

In this case, while not abundant, the evidence supports the trial court's removal of Beth as executrix. Notably, the record speaks for itself, containing years of litigation regarding the disqualification of the parties' respective attorneys.[3] In addition to the instant record,

_____

[3] We observe that Richie represented Beth in Grady's succession (which was the impetus for his disqualification in this proceeding), and in that succession, Beth had

8

the trial court referenced related litigation: the possessory action by James and his wife,[4] and another action pending in the trial court. It was reasonable for the trial court to consider the entire succession record as it pertained to the Maddens' motion and take judicial notice of that record. Also, the trial court's reliance on the Succession accounting filed by Beth was also reasonable, as was its observation of the attorney fees incurred by Beth—as illustrative of her "motivation and lack of prudence and judgment." Likewise, we note items in the accounting not particularized by the trial court but which also speak to Beth's "lack of prudence and judgment," *i.e.*, a television service subscription and a house sitter for an unoccupied house in close proximity to James' residence. Finally, the attorneys involved with the Succession articulated what the record itself signified: Beth's inability to unravel the confusion regarding her mother's estate. Both Harper and Medlin testified as to Beth's difficulty in determining assets of her mother, and we recognize the perplexity surrounding any interest Johnye had in the closely held family business. It may be that a neutral third party executor is necessary to make that finding. Thus, we find no error in the trial court's conclusion. The determination of whether to remove or replace a succession representative is within the discretion of the trial court and will not be reversed by this court in the absence of an abuse of that discretion. *Succession of LaFleur,* 1999-1100 (La. App. 3 Cir.

---

moved to remove her nephew (and James' son) as executor—a premonition to current legal action in this case.

[4] *Madden v. Chumley,* 52,888 (La. App. 2 Cir. 9/25/19), 280 So. 3d 897.

9

12/8/99), 752 So. 2d 237, *writ denied,* 2000-0446 (La. 3/31/2000), 759 So. 2d 74. Beth's assignments of error are without merit, and the trial court's conclusion was not an abuse of discretion.

## CONCLUSION

Considering the foregoing, we affirm the judgment in favor of James Madden as agent and attorney-in-fact for his granddaughters, Catherine and Savannah Willis, which removed Mary Elizabeth Madden Chumley as executrix in the Succession of Johnye Mae Madden. All costs of these proceedings are assessed to Mary Elizabeth Madden Chumley.

**AFFIRMED.**